The Mechanics' & Farmers' Bank vs. Dakin and others.

Where there are two establishment in the same place for the carrying on the business of transportation of goods, both conducted by the same individual, in one of which he is a partner, and in the other sole proprietor, and he obtains moneys from a bank on checks drawn by him signed in his own name generally as agent: in an action by the bank against the firm, for the recovery of a balance due upon such checks, the firm have the right to show that they are not indebted to the bank, and that the indebtedness, if any, is by the individual solely who drew the checks, where there is no proof that the other members of the firm knew the mode in which the checks were drawn.

A plea in abatement for the non-joinder of parties admits the plaintiff's claim, but not the amount ; the defendant failing to establish his plea, may contest the whole or any part of the plaintiff's claim, the same as on a plea of the general issue. He, however, must submit to a verdict against him for nominal damages.

[ *412 ]  *Where a defendant pleads the non-joinder of one as a co-defendant, and on the proof it turns out that there are three persons who should have been joined, the plaintiff is entitled to a verdict notwithstanding that the plea is verified. The defendant should have named all the joint contractors not on the record.

So where four persons were sued as joint contractors, and were described as copartners carrying on business under a particular name, and one of them put in a plea in abatement alleging the non-joinder of three other persons ; to which the plaintiff replied that the defendants were members of an association called *The New-York and Geneva Line*, formed for the transportation of passengers, and had omitted to file a statement of the names of the persons composing the association ; and the defendant rejoined that he was not a member of an accociation transacting business under such name ; it was held, that the plaintiff was entitled to a verdict, notwithstanding that it was proved that the defendant was not a member of the association named, but of another association : on the ground that the substance of the issue only is required to be proved, and that the name of the association specified in the pleadings may be regarded as surplusage.

This was an action of *assumpsit*, tried at the Albany circuit in October, 1839, before the Hon John P. Cushman, one of the circuit judges.

The suit was brought against Eldridge Dakin, Nicholas Kip, John Rice and Stephen Rice. The declaration described the defendants as copartners in the business of the transportation of passengers and property by boats and vessels, under the name, style and firm of "*The New-York and Geneva Line*," and contained the money counts only. The defendant *John Rice* pleaded in abatement that *John V. R. Schermerhorn* should have been joined as a co-defendant, the promises in the declaration having been made by him jointly with the defendants. Upon this plea the plaintiffs took issue. The

defendant *Stephen Rice* also pleaded in abatement, that not only *John V. R. Schermerhorn*, but also *Henry Woolsey* and *Ezekiel Clark* should have been joined as co-defendants. To this plea the plaintiffs replied, (protesting that the promises, &c. were not made by the defendants jointly with Woolsey, Clark and Schermerhorn,) that the defendants, at the several times, &c. at the city of Albany, &c. were copartners and members of an association under the name of " *The New-York and Geneva Line*," formed for the transportation of passengers and property, and that they carried on their business through the county of Albany; by *means where-   [ *413 ] of, and by force of the act entitled " An act to compel voluntary associations to furnish to the public the names of their members," passed 20th May, 1836, the association were required to make and prepare a statement of the names of the persons composing the association, and to file the statement in the office of the clerk of the county of Albany; but that at the time of the making of the promises and at the time of the commencement of this suit, they had neglected so to do, concluding with a verification and prayer of judgment. The defendant *Stephen Rice* rejoined, that at the several times in the declaration mentioned he was not a member of any associatiun under the name of " *The New-York and Geneva Line*," in manner and form as alleged in the replication, concluding to the country. On these issues the cause went to trial.

The defendants proved that the *four* defendants against whom the suit was brought, *together with* John V. R. Schermerhorn, Henry Woolsey and Ezekiel Clark, constituted a company for the transportation of goods called " *The Penn Yan and Geneva Line*," and that *John V. R. Schermerhorn* was their agent for conducting their business, by raising money, &c. in the city of Albany. This line was formed in January, 1836, or previous to that time. Before this testimony was given, the plaintiffs had proved the payment of five checks drawn upon them in the month of December, 1836, amounting together to the sum of $2126,32, drawn upon them by J. V. R. Schermerhorn, and signed, " J. V. R. Schermerhorn, agent." The plaintiffs called Schermerhorn as a witness, and he testified that in 1836 he was a member of " *The Geneva and Penn Yan Line*," and also during the same year carried on the business of transporting goods on his own account, under the name of " *The New-York and Geneva Line* ;" that he drew checks on the plaintiffs for the benefit of the latter line, affixing thereto the name and addition of " J. V. R. Schermerhorn, agent ;" making no distinction at the plaintiff's bank between " The Geneva and Penn Yan Line" and " The New-York and Geneva Line," and all his checks were drawn in the name of J. V. R. Schermerhorn, agent." The *defendants     [ *414 ] *offered to prove* that the proprietors of " The Geneva and Penn Yan Line" were *not indebted* to the plaintiffs ; and that the checks given in

evidence were drawn for the benefit of " The New-York and Geneva Line." This evidence was objected to, and refused to be received by the judge ; to which decision the defendants excepted. The amount claimed by the plaintiffs upon the checks produced was $359,79.

The defendants moved for a nonsuit, or that the judge direct the jury to find a verdict for the defendant *John Rice*, upon the ground that his plea in abatement was proved, and for the defendant *Stephen Rice*, upon the ground that the plaintiffs had failed to maintain the issue on his plea. The judge refused to nonsuit the plaintiffs or to instruct the jury to find for the defendants on either of the pleas. As to the issue joined upon the plea of *Stephen Rice*, the judge held that the issue in substance was whether Stephen Rice was a member of *an* association formed for the purpose of the transportation of passengers and property of such a character as to subject them to the provisions of the act passed 20th May, 1836, compelling voluntary associations to furnish to the public the names of their members, and directed the jury to find a verdict for the plaintiffs. To which decision the defendants also excepted. The jury found a verdict for the plaintiffs for the amount claimed. The defendants move for a new trial.

*S. Stevens*, for the defendants.

*J. Van Buren*, for the plaintiffs.

*By the Court*, COWEN, J. Schermerhorn was the admitted agent and acting partner of the defendants at Albany. He there did business for them and signed checks as *agent*, and also in the same form for another line in which he was sole proprietor. For both he called himself *agent ;* and, looking at the checks in question, it was entirely ambiguous whether they were drawn for one line or the other ; whether they were due from the defendants or from Schermerhorn alone. I do not understand Schermerhorn as saying that the *defendants consented to his doing the business for both lines in his name as agent ; and if they had, I do not think it should preclude them from showing the truth as to what checks were drawn for them, and what on Schermerhorn's own account. The defendants offered to show that all the moneys were in fact obtained by the witness on account of himself. Certainly his testimony for the plaintiffs, though clear and positive, was not conclusive. He might have been impeached or contradicted. I see nothing in the case absolutely binding the defendants to pay all checks drawn by Schermerhorn as agent. It is said that *J. V. R. Schermerhorn, agent*, was the name of their firm at Albany ; but it was also the name there of Schermerhorn's own line. Which, according to the offer, in fact had the money ? If Schermerhorn drew on his own account and used the money, how can the defendants be made liable ? 'Sup

[ *415 ]

pose he had sworn that the money was obtained for himself and used for his own benefit, had the defendants done any act which estopped them ? Had they been the sole firm acting at Albany in the name of " J. V. R. Schermerhorn, agent," they would have been estopped ; but there were two distinct firms of that name whose business was conducted by the same man. I do not find it in the evidence, as the plaintiff's counsel supposes, that the defendants ever consented to a blending of the business of the two lines under one name, so as to make themselves liable as well for all the debts of Schermerhorn's line as of their own. At any rate, he does not testify that all the defendants were consulted and consented to such a form of business. It was in fact so done, but of his own head. The offer of the defendants was a strong one ; it was to show the defendants not indebted to the plaintiffs ; that the checks were the witness Schermerhorn's own.

It may be said that the pleas in abatement admitted the plaintiff's claim. They certainly did ; but not the amount of it. The defendants failing to sustain them by proof, as I think they did, the effect was the same as a judgment by default. Nominal damages were admitted, and these the plaintiffs were entitled to recover at all events. The *defend-    [ *416 ] ants could not entirely defeat the plaintiffs ; but might contest the whole or any part of the claim given in evidence, the same as if the general issue had been pleaded. Their only disadvantage was that they must finally submit to a verdict of nominal damages. This would be the effect of their unfounded pleas in abatement, not of the evidence in the cause. *Waggener* v. *The Bells*, 4 *Monroe*, 11. *Haley* v. *Caller*, 1 *Alab. R.* 63.

John Rice's plea in abatement clearly failed. He pleaded promises made by the defendants jointly with Schemerhorn only, whereas the real promissors were the defendants with Schermerhorn and two others, Clark and Woolsey. In pleading a non-joinder, it is perfectly well settled that you must name all the promissors who should have been joined. If you can abate by pleading one and proving more, a second suit may be abated in the same way, and so a third. You must give the names truly, so that the plaintiff may have a good writ or declaration the second time. He need not wait till the plea in abatement be tried, but may immediately enter a *cassetur billa*, and commence a new action against all the persons whose names are furnished. *Tidd's Pr.* 626, 632, *Am. ed. of* 1807. Under our rule 96, upon a plea of non-joinder, the plaintiff may amend on terms, of course. It is entirely settled in England, that if the plaintiff take issue, though the defendant at the trial shew the promise to have been made jointly with the person he has named in his plea, yet if it appear that another or others not named by the plea as defendants were also joint contractors, the proof fails, and there must be a verdict for the plaintiff. 3 *Chit. Pl.* 899, *note (F.) Am. ed. of*

1828. *Per De Grey, C. J. in Abbott* v. *Smith*, 2 *Black. R.* 951. *Per Gibbs, C. J. in Godson* v. *Good*, 2 *Marsh.* 302. *Per Denison, J. in Pearce* v. *Davy*, 1 *Kenyon's R.* 366. The last case holds that all the joint contractors not on the record must be named in the plea, and positively sworn to be joint contractors by the party pleading ; not shown to be so merely by way of inference from circumstances. It is none the less important with us to adhere to the same practice. It enables the [ \*417 ] plaintiff, by a single amendment under rule 96, \*to perfect his writ or declaration, or both, accordingly as he may have commenced his suit by a capias or declaration.

In regard to Stephen Rice, the course of pleading was this : The plaintiffs declared against four persons, averring they were partners under the name, style and firm of the *New-York & Geneva Line.* He pleaded that the promises, if any, were made jointly with three others. The replication was that the defendants were members of a company by the name of the *New-York & Geneva line*, which should have been registered in the Albany clerk's office ; and, not being so, were ousted of a right to plead in abatement, by the statute, *Statutes of* 1836, *p.* 58 2, *ch.* 385, § 1, 2. The substance, both of the declaration and the replication, was, I think, that the defendants were partners in contracting the debt. Suppose they had pleaded the general issue, and the proof had been that they had all jointly received the money under the name of the *Penn Yan & Geneva line*, instead of the firm mentioned in the plaintiff's declaration ; surely that would have been no defence. The issue would be whether the defendants were jointly liable ; and whether their firm were called A. or B. would not vary the material fact. Now here, the plaintiffs have shown, in substance, that the defendants were members of an association, which, not being registered in the Albany clerk's office, had no right to plead in abatement. Stephen Rice, in his rejoinder, says in substance, that he never was a member of such a company as the plaintiffs had described ; and it comes out in proof that he was. I think the name *New-York & Geneva line* may be considered as if stricken out of all the pleadings. The name was entirely impertinent, and foreign to the real question between the parties. That was merely whether they were a company within the statute, by one name or another, or no name at all. It is admitted they were, by the name of the *Penn Yan & Geneva line.*

Every book on evidence declares that the substance of the issue alone need be proved ; and, in searching for that, the distinction between immaterial and impertinent averments, has been well understood and often acted on, ever since *Bristow* v. *Wright, Doug.* 665. *Peppin* v. *Solomons*, \*5 *T. R.* 496. *Williamson* v. *Allison*, 2 *East*, 446, 452. [ \*418 ] *Wilson* v. *Codmans's exr.* 3 *Cranch*, 193. A declaration against

partners is just as well, though it do not mention the defendants as partners at all. *Mack* v. *Spencer*, 4 *Wend.* 411. *Wardell* v. *Pinney*, 1 *Wend.* 217. And though it falsely allege that they became liable as acting in a certain name, it is no answer to say they did not act in such name. A declaration averred that John Lowe, *trader, and surviving administrator of S. F.*, made his bond. The court said, if the description were not true, it might be rejected as surplusage. *Clark* v. *Lowe*, 15 *Mass. Rep.* 476. In the replication here it was material to show a company; but be their name or firm what it might, they were equally liable, and equally bound to register their names, in order to avoid a suit against separate members. The particular name under which they did business, was material neither to their liability nor their obligation to become registered.

The Rices, therefore, clearly failed in sustaining their pleas in abatement; and the defendants were properly holden liable.

But they had a right to contest the amount of damages, by the proof offered. The learned judge, we think, erred in overruling the evidence.

Therefore, we direct a new trial, the costs to abide the event.