THE HASTINGS NATIONAL BANK v. WELLINGTON HIBBARD,
MILAN HIBBARD, PETER GRAFF, JR., JOHN A. COVODE,
HENRY W. HINSDALE AND PHILIP M. GRAFF.

*Partnership liability on paper as between firms of the same name.*

A firm of three partners, engaged in running a particular mill, tempora-
rily arranged to take in another partner and run an additional mill
as another firm. Both firms, however, had the same name and used
the same letter heads upon which the names of all four partners were
printed, but the business of the two mills was kept distinct. The
second mill kept no bank account but borrowed from the first when
necessary, and kept its account with it. One of the original part-
ners made a note in the firm name and discounted it and in an action
upon it by the bank which advanced money on it the jury found
that the bank in making the loan relied exclusively upon the credit
of the original partners. It was not claimed that the money was
borrowed or used for the benefit of the later firm. *Held,* that the
additional partner could not be held liable upon it.

Error to Kent.   Submitted April 21.   Decided June 14.

ASSUMPSIT.   Plaintiff brings error.   Affirmed.

*Blair, Kingsley & Kleinhans* for appellant.   Where
several firms are connected in business and use the same
name in signing paper, a holder thereof may elect which
partnership to sue upon it unless he ought to have known
definitely that it belonged to one and not the other:   Pars.
Partnership 225 ; 1 Pars. N. & B. 137; 1 Colly. on Part.
689; 1 Lindley Part. 341.

*John Patton, Jr.* and *N. A. Earle* (for defendant Covode) ;
*John C. FitzGerald* for W. Hibbard; and *Simonds,
Fletcher & Wolf* for P. M. Graff, M. Hibbard and P. Graff,
Jr.   The rule of *Baker v. Charlton* 1 Peake III, that one
sued on paper made in the name of a firm to which he
belonged could not show that it was on the account of
another firm of the same name,—see also *Swan v. Steele* 7
East. 210,—is repudiated: 1 Lindley Part. (4th ed.) 344 ;

*Hall v. West,* Exchequer Chamber (1875); the true rule is that if one of several partners borrow for his own use, on the note of the firm without their authority, the rest are bound unless there was some reason to induce the lender to suspect that the loan was not for their benefit; but if one partner is unknown when the money is borrowed and the loan is made on the credit of the others alone, the lender supposing them to constitute the entire firm, they only are liable: *Miller v. Manice* 6 Hill 114; see *Hedges v. Hibbard* 46 Mich. 551; mere apparent partners, as distinct from actual partners, are only responsible to those who have acted in the belief that they were really partners: *Wood v. Pennell* 51 Me. 52; *Chase v. Deming* 42 N. H. 274; 2 Greenl. Ev. (11th ed.) § 408 : 1 id. § 207; Story Part. § 84; *Fitch v. Harrington* 13 Gray 468; *Reber v. Columbus etc. Co.* 12 Ohio St. 175; *Rice v. Barrett* 116 Mass. 312; 1 Sm. Lead. Cas. 1190; 3 Kent's Com. (10th ed.) 28; *Benedict v. Davis' adm'r* 2 McLean 347.

CAMPBELL, J.   Plaintiff sued the two Hibbards, Peter Graff and Covode as makers, and Hinsdale and Philip Graff as endorsers of a promissory note for $5000 made and discounted in December, 1879, and payable April 1, 1880, when it was dishonored.   The only questions which became material related to the legal identity of the makers, who signed as "Hibbard & Graff."

Upon certain facts there was no dispute.   The two Hibbards ·and Peter Graff for several years did business at Grand Rapids under the name of Hibbard & Graff, and in that name ran two flouring mills, called the Valley City mills and the Crescent mills.   The Valley City mill was a rented building' and had only been occupied about a year.

On January 27, 1879, Hibbard & Graff formed a partnership with Covode to run the Valley City mill, that firm to own three-fourths and Covode one-fourth interest.   The business was to be entirely distinct from the Crescent mill business, in which Covode was to have no interest, although the business so far as practicable was to be done in the Crescent

mill office, but the accounts were to be kept separate. Different book-keepers kept the books, and the Valley City mill office was in a different room from the other. The name of the new firm was to be the same as the old one, Hibbard & Graff.

After the new firm was organized letter heads were printed which at the top contained the names of all four. Beneath these names appeared the name Hibbard & Graff, as proprietors of the two mills. These appear to have been used indiscriminately. The Valley City mill kept no bank account and did no bank business, but borrowed, when necessary, of the Crescent mill, and was charged for such advances and credited with money and other counter credits furnished by itself to the other. No notes were issued by the Valley City mills in the course of their business, and all moneys received on loan discounts were paid into the Crescent mills where an account was kept of advances made to the Valley City mills as with any other individual debtor.

The note in suit is one of two $5000 notes executed by Wellington Hibbard while Covode was absent in Europe, under the name of Hibbard & Graff, not for the benefit of the firm, but to use in his and Philip Graff's outside gambling wheat speculations, which seem to have been destroying the means of the business. The money was obtained as claimed by plaintiff under pretense that it was wanted for actually contemplated wheat purchases for milling business. The question is, if this was so, which firm was the maker in the eye of the law? The jury found that the new firm was not the maker. The errors assigned relate to the charge of the court, given or refused, on various parts of the case.

The court actually charged that Covode would not be liable merely because he was a partner in the Valley City business, if the loan was negotiated as part of the business of the Crescent mills, but that presumptively a note might be made by a partner which would bind the firm for which he made it, if taken without knowledge in the bank, on reasonable grounds of inquiry, that it was unauthorized. Also that Covode might be bound by allowing himself to

be held out as a member of the firm purporting to act, if faith was given in the discount to his being a partner.

It was charged that if credit was given exclusively to the other members of the firm and not to Covode, he would not .be bound unless by subsequent ratification, if the money was not negotiated for the business of the Valley City mill. But on the other hand if the bank only knew of a firm which it supposed to be composed of the four, and made the loan on the credit of that firm, then all would be bound if the transaction was in good faith; and further, that although Covode was not a member of the Crescent mills firm, he would be bound if he had allowed himself to be held out as a member of a firm operating both mills, if the bank relied upon that, in good faith. The letter heads were held to authorize the jury to draw such an inference if they thought them calculated to create such an impression, and if acted on by the bank as before mentioned. And it was also held that unless the bank had reason to believe to the contrary it could rely on the representations of Mr. Hibbard concerning the purpose of the loan, and if informed it was for the firm of four, credit should be presumed to have been given to the four.

The jury, in answer to specific requests, found that Covode was not known to plaintiff, and that exclusive credit was given to the other persons as a firm. They also found that the note was given by Wellington Hibbard to obtain money to speculate in wheat margins on his own account, and that this was a gambling transaction.

It is assigned as error that these findings are not supported by evidence.

Error is also assigned on the charges bearing on the effect of giving exclusive credit to others than Covode and on his liability in case he was not actually a partner of the firm relied on. Also to so much of the charge as held that if the money was lent with notice that it was for business beyond the scope of the partnership business and for different parties, the bank might be affected by the fraud without absolute knowledge of it.

Error is also alleged on the refusal of the court to make several charges substantially as follows: *First*, that when two firms in one city of the same name have some members in common, and a person who is a member of both issues a note which is discounted in good faith without information as to which firm issued it, the holder may elect which firm he will hold. *Second*, a charge was asked to the same effect as applied specifically to the firms in question and Mr. Covode's liability. *Third*, that in such case the partners were themselves responsible for the hardship which they might have avoided by using different firm names. *Fourth*, that writing the letters which were sent in regard to obtaining the discounts, on the letter heads before referred to, was such a holding out of Covode as a partner in both mills as, if relied on in good faith, would render him liable. And *fifth*, that there was no evidence that the bank officers knew it was for an improper purpose.

The special findings of the jury, if based on testimony, render the fourth and fifth requests just named unimportant. It is distinctly found that credit was not given to Covode as a partner and was given only to the others. It is not claimed, however, and the court below did not hold, that the use of the letter heads in question would 'not have bound him if credit was actually given in reliance on them as showing one firm for both mills. But we are not satisfied that the jury had not testimony enough to act on, which justified them in the conclusion that the bank officers relied on the formerly existing firm, which had been known for some time, and paid no heed to the names printed in the corners, or to the letter head itself. It is not uncommon for persons dealing with business houses to pay very little attention to their printed letter heads, and if the inference the jury drew from the whole testimony and demeanor of the witnesses before them was, as it seems to have been, that the bank officers acted on other grounds, we have no right to say, as matter of law, that their conclusions are wrong. It was, after all, a question of fact.

The case, so far as we can see, comes down to the ques-

tion which was the chief one relied on upon the hearing, whether the fact that Hibbard represented both firms and both had a common name, gave the plaintiff a right to elect which firm to hold responsible, without reference to the credit actually relied on.

The cases referred to in the elementary works cited by counsel for plaintiff do not, in our opinion—whether correctly decided or not—cover just such a case as the present. They hold unquestionably that where money is lent or credit given to a partnership business, unknown as well as known partners will be bound. It is held also in one or more of these cases that where several firms are concerned together in common interests and a member of some of the firms has so acted concerning paper issued by one of the firms in which he was not a partner, as to give reason to believe him a member, those who dealt on that belief might hold him personally. This is all that was actually decided in the Scotch case of *McNair v. Fleming*, in which the House of Lords partially affirmed the decision of the Court of Session. 3 Dow. P. C. 229. This is the case which Mr. Collier (Partnership, p. 222) says was regarded by Sir Samuel Romilly as deciding that where different partnerships do business under the same firm and make negotiable paper under the same signature the holder may select whichever of them he pleases as his debtor, but cannot select them all. Neither this nor any other well-defined class of cases went—so far as we can judge—outside of the general rule that partnership liability rests on the ground of agency, and that those who have authorized any one to act on their behalf, either actually or impliedly are bound when he does so act, to those who deal with him as representing them or the firm to which they belong. It must always be remembered that general language in legal discussions is to be construed with its surroundings, and cannot be dealt with in the abstract.

In the case of *McNair v. Fleming*, after sustaining the general view of the Court of Sessions, the House of Lords allowed the defendant to set up the defence that plaintiff

was barred by sequestration proceedings against the partner-
ship in whose name the paper was issued, of which he was
not actually a member, although they supposed him to be.
The case of *Yorkshire Banking Co. v. Beatson*, 4 C. P.
Div. 204 : s. c. on appeal, 5 C. P. Div. 109, refers to several
of the familiar cases on the subject, and like most of them
regards the facts of each case as material in fixing the lia-
bility.

In the present case there can be no doubt that as between
himself and his partners Hibbard had no right to borrow
this money for his own purposes.  If not absolutely deter-
mined by the evidence it certainly tends to show that under
their usual course of business even the main firm of Hib-
bard & Graff could not properly bind Covode by any such
loan for firm purposes.  As between the two firms the
usual practice seems to have confined loans to the original
firm.   In any event the later firm if bound at all could only
be bound on the principle that it is incident to such busi-
ness that one partner may bind it.   And it is equally clear
in our judgment that the firm to be bound must be the firm
in whose name and for whose benefit Hibbard was under-
stood to be acting.   The court below charged very clearly
that if the bank officers supposed there was but one firm of
all the four doing business, all would be bound.

But as a matter of fact the original firm of Hibbard &
Graff had never changed, and continued on the same
relations as before.  It had only made an arrangement for
two years, subject to termination on ninety days' notice,
whereby it allowed the use of one of its mills to a firm in
which it held a three-fourths interest, as a partnership, and
not in the several names of its members.  The case does
not therefore differ materially from that of an individual
making a partnership arrangement for a separate part of his
business, where it has always been held that it must depend
on the facts of the case whether paper signed in the indi-
vidual name was sole or firm paper.

If therefore the bank dealt with the firm it had always
known and which was still doing business, and lent money

supposing it to be for that firm, the new firm could not be made liable unless the money was actually borrowed or used for its benefit. But this is not pretended, unless on the theory that credit was given to all four,—which is clearly negatived.

When this case was here before—although not then in perfect shape for disposal—it was intimated that the result now arrived at appeared to be the proper one. If the jury were right on the facts, we think the court was right on the law. There was evidence from which a different conclusion might have been reached, but the verdict has been allowed to stand, and we must assume justly.

We discover no error in the record, and the judgment must be affirmed with costs.

COOLEY and MARSTON, JJ. concurred.