## In re VETTERLEIN.

*(District Court, S. D. New York. November 5, 1890.)*

1. **BANKRUPTCY—PREFERENCE OF THE UNITED STATES—ACCOUNTING—PROVISIONAL ORDER—RES JUDICATA.**

   A dividend warrant having been drawn in 1871 in favor of H., but never delivered, and the United States having thereafter established a claim against the bankrupts which is entitled to a preference, and the circuit court having thereafter, on the application of H., directed payment by the assignee of the warrant to H. upon her executing a bond for repayment to the assignee, if it should be determined thereafter that the assignee was bound to repay the United States any moneys previously paid out on similar warrants, and the district court, in an accounting by the assignee, on application of the United States for the moneys in his hands, having directed the payment to the United States of such moneys, not including the warrants which appeared on the credit side of the assignee's account, *held*, that neither order was *res adjudicata* in favor of the petitioner, H., because (1) the circuit court order was a provisional one, and did not pass upon the merits; and (2) the order of the district court, on accounting, did not adjudicate the dividend in question to any one, but left it undisposed of; and that the subsequent determination in the circuit court, in another suit, that the United States was entitled to all such moneys, deprived the petitioner of any equity.

2. **SAME—PARTNERSHIP—BRANCH HOUSES—MARSHALING ASSETS—REV. ST. § 5074.**

   The law has never recognized branch houses, conducting different businesses at different places, under somewhat different firm names, as constituting distinct estates, whose assets were to be marshaled for the benefit of the different sets of creditors of each branch, where the copartners, carrying on both branches, were identically the same. The object of section 5074 of the Revised Statutes was not to create distinct estates in such cases to be marshaled separately, but to admit double proofs, upon double security, for the same debt. Accordingly *held* that, in such a case, the total assets are liable *in solido* for all the partnership debts, and that a claim of the United States was entitled to a preference upon the whole assets, though its claim arose solely out of the business of one of the branch houses.

Petition of Matilda Hare, as Administratrix.
*Roger M. Sherman,* for petitioner.

*Edward Mitchell,* U. S. Atty., and *Maxwell Evarts,* Asst. U. S. Atty., for the United States.

*John P. Clarke,* for assignee.

BROWN, J. In September, 1871, a first dividend was declared in favor of creditors in the above matter, including the sum of $1,125, to the petitioner's intestate, Thomas Hare, trustee. Warrants for all the dividends were executed, and most of them delivered. That to Hare, trustee, was not delivered, on account of some difficulty in the proper voucher to be given for it. Some considerable time afterwards the United States obtained a judgment for $99,951 against the bankrupts upon a forfeiture of the value of goods fraudulently imported by them before the bankruptcy, and in January, 1886, commenced suit against Demas Barnes, the assignee, personally, to recover the sum of $32,000, which he had paid out to creditors on the dividend of 1871. On the trial of the case, in February, 1886, in this court, a verdict was directed for the defendant, following the decision of GRESHAM, J., in *U. S. v. Murphy,* 15 Fed. Rep. 589. On a writ of error thereupon taken to the circuit court, the judgment was reversed, in July, 1887, and a new trial ordered. Meantime, in April, 1886, an application by petition was made by Mrs. Hare to this court for an order directing the assignee in bankruptcy to pay her the dividend of $1,125, declared in 1871. In view of the pendency of the litigation respecting the rights of the United States as against the assignee, the motion was denied without prejudice. On a review of this order in the circuit court, in May, 1886, the order was there so modified as to direct the assignee to pay Mrs. Hare the dividend upon her furnishing the assignee an approved bond with surety for the repayment thereof, with interest, in the event of judgment being "recovered against the assignee by the United States in the pending suit." No bond was furnished, and the dividend, therefore, remained unpaid. After the reversal by the circuit court of the judgment below in the suit brought by the United States, the claim was compromised and settled between the government and the executors of the assignee, who had died in the mean time, and the action was thereupon discontinued. The reversal (24 Blatchf. 466, 31 Fed. Rep. 705) was upon the ground that the United States was not bound to come into the bankruptcy court to assert its priority, even as respects the fund being administered by the court; and that the assignee, when chargeable with notice of any existing claim on the part of the government, pays any dividend at his own peril, under sections 3466 and 3467 of the Revised Statutes, notwithstanding any order of the court in bankruptcy for such payment; and that no laches or estoppel can be imputed to the government for the assignee's protection. Subsequently to the death of Mr. Barnes a new assignee was appointed on November 17, 1888, who, upon the order of the court, dated March 18, 1890, paid all the remaining assets, including the fund in question, to the government. In October following the present application was filed for an order directing the new assignee to pay the same dividend to Mrs. Hare, upon three grounds: (1) That

the circuit court order for the payment to Mrs. Hare, on her filing a bond, was substantially an adjudication in her favor, and that, the suit of the United States having been terminated without any "judgment being recovered against the assignee," there is no longer any occasion for the filing of a bond as a condition of receiving payment; (2) because the dividend in question was, by the order of this court, dated April 22, 1884, in a proceeding in which the government was petitioner, recognized as a credit to the assignee to be paid to the proper person; (3) because, as it is said, the United States has already been paid more than the entire assets of the New York branch of the bankrupts' business, in which alone the forfeiture accrued, and that for the residue the United States had no priority over creditors of the Philadelphia branch as respects the assets there, because the business of the two branches was, as alleged, wholly distinct, and the assets must be marshaled, so that the creditors of each branch may have priority upon their respective assets. Even if the order of March 18, 1890, directing the new assignee to pay the funds in question, with other funds in his hands, to the United States, had not been made, and if the dividend in question were still in the registry, the petition could not be granted.

1. The order to pay Mrs. Hare, on her filing the bond, etc., was evidently a provisional order, intended to secure repayment of the money to the assignee in case the United States should be held entitled to a priority as respects that money, and to indemnify the assignee for his liability, in that event, to pay the same moneys to the United States. The subsequent decision in the circuit court determined that the assignee was liable for similar payments previously made, and would be liable to the United States for any such payment made to Mrs. Hare. As the order was not acted on, no bond being given, it is immaterial that the language of the condition is not literally applicable in consequence of the suit having been settled by compromise, instead of by entry of final judgment against the assignee. In the memorandum accompanying the decision of the motion, Judge WALLACE says:

"It may turn out, however, by the result of the pending suit between the United States and the assignee, that the former is entitled to priority out of the undistributed estate over the claim upon which the dividend had been declared. In that event the present claim would have no equities against the assignee."

The reversal by the circuit court of the judgment below in favor of the assignee was a direct determination that the United States was entitled to priority over the claims upon which that same dividend had been declared. The present claimant, therefore, in the language of Judge WALLACE, has "no equities against the assignee." The adjudication made in the former order was plainly not a final adjudication on the merits, and the reversal of the judgment wholly supersedes its provisions, since it was never acted upon. On application it would be canceled.

2. The order of April 22, 1884, was not an adjudication as respects the rights of Mrs. Hare, or of the United States, to the payment of this

dividend. No such question was presented to the court or determined. The application was simply an application by the United States for an order directing the assignee to pay the government the sums in his hands. On the assignee's accounting a certain amount was thereupon ordered to be paid to the government, as had been done at various times before; but there was no consideration, and no determination, as to how this dividend should be disposed of. . It was not by that order adjudged to Mrs. Hare, or to any one; it simply remained undisposed of in the hands of the assignee. There was nothing, therefore, in that order to prevent the government from making its subsequent application for any other moneys in the assignee's hands, including this dividend, not already adjudicated. *Russell* v. *Place*, 94 U. S. 606–608; *Cromwell* v. *County of Sac*, Id. 351–358. A similar point as respects the force of that accounting was apparently made before Judge WALLACE in the case of *U. S.* v. *Barnes*, above referred to, and was overruled. 24 Blatchf. 470, 31 Fed. Rep. 708. The decision of the circuit court, in favor of the priority of the United States, and of the personal liability of the assignee for all payments of dividends made to others, in reality covers the whole ground, and, as above stated, deprives the petitioner of any equity so far as respects the foregoing grounds of her claim.

3. No authority is cited for the position, now taken for the first time 20 years after the bankruptcy, that the assets belonging to the different branches of the bankrupts' business in New York and in Philadelphia shall be marshaled separately for the benefit of the respective creditors of each, or that any such marshaling, even if allowable as respects the different creditors, would prevail against the statutory priority of the United States. For the petitioner it is urged that section 5074, U. S. Rev. St. (section 21 of the bankruptcy act of March 2, 1867) recognizes the assets of distinct businesses, though carried on by the same identical firm members, as being distinct estates to be wound up as such in bankruptcy, and hence marshaled in favor of their respective creditors. That section is as follows:

"When the bankrupt, at the time of adjudication, is liable upon any bill of exchange, promissory note, or other obligation in respect of distinct contracts as a member of two or more firms carrying on separate and distinct trades, and having distinct estates to be wound up in bankruptcy, or as a sole trader, and also as a member of a firm, the circumstance that such firms are in whole or in part composed of the same individuals, or 'that the sole contractor is also one of the joint contractors, shall not prevent proof and receipt of dividend in respect of such distinct contracts against the estates respectively liable upon such contracts."

Although this section speaks of firms in whole or in part composed of the same individuals, it does not provide under what circumstances the firm estates shall be kept distinct. The argument rests upon implication only, and though the language of this section, considered by itself alone, would seem to furnish an implication that the same identical individuals might compose "two or more firms, carrying on separate and distinct trades, and having distinct estates to be wound up in bank-

ruptcy," yet it is improbable that such a change in the law previously existing would have been intended to be created by a mere implication instead of more direct language; and, when viewed historically, there is no doubt, I think, that this section was not adopted for the purpose of making any change in the law in that respect; that it does not apply at all where there are not legally distinct estates under the law as theretofore existing; and that its only object was to establish in bankruptcy the rule previously enforced in this country, that a creditor, having double security for the same debt, by distinct contracts, through the obligations of a firm, and of one or more individual members of it, singly or combined, might prove against all the distinct estates, whatever they might legally be, without being put to his election between them, as was required by the former English rule. *Emery* v. *Canal Bank*, 3 Cliff. 507, 7 N. B. R. 217; *Ex parte Honey*, L. R. 7 Ch. 178, 182. Where the members of the two firms are not all the same, the firm assets are necessarily distributed as distinct estates, because the firms are in part different, and the creditors of one firm are not creditors of the other. *Lewis* v. *U. S.*, 92 U. S. 618. Here the two firms are legally one, and identical, though the individual interests in the different branches of the business may have been different. The English cases that admit proofs of debt as between one firm and another firm containing the same partners as the former together with one or more other partners, (Lindl. Part. *997; *In re Buckhause*, 2 Low. 331,) do not establish any right to such marshaling of assets where the members of the two firms are identical, but in principle exclude it. The former English rule against double proofs was modified by section 152 of the English bankruptcy act of 1861, which was adopted for the purpose of allowing double proofs in the cases stated. Section 5074, Rev. St., in our bankruptcy act of 1867 was copied *verbatim* from section 152 of the English Act, and with the same purpose only. The perplexity in that act and in ours, occasioned by the words "having distinct estates to be wound up in bankruptcy," in connection with the words "firms in whole or in part composed of the same individuals," was in the English act got rid of by an amendment (Act 1869, § 37) dropping the former words. But, aside from this last amendment, which evidently was not intended to change the law as to when estates should be held distinct, but to avoid perplexity of construction, the English courts have repeatedly declared that section 152 of the act of 1861 (our section 5074) applies only where there are distinct estates, and that there are no distinct firm estates, when the firm consists of the same individuals, though they carry on distinct businesses, in distinct places, and under different firm names. 2 Lindl. Part. (2d Ed.) *748, 749; *Ex parte Wilson*, L. R. 7 Ch. 490; *In re Hooper*, 11 Ch. Div. 317; *Banco de Portugal* v. *Waddell*, L. R. 5 App. Cas. 161, 168, 173. *Ex parte Wilson*, *supra*, arose under the English act of 1861. Section 5074 of the Revised Statutes must be similarly construed.

This was a single copartnership, though with two branches. The several changes in the firm from time to time affected both branches alike. The bankruptcy was one; and the whole assets have from the

first been treated by every one hitherto, from the original voluntary assignment downward, as one estate. I find no authority in the law for treating them otherwise, however different may have been the businesses conducted at the two establishments. To do so would be to treat the two branches as independent firms, or as corporations *pro tanto*, which they are not. A judgment recovered upon the debt of one branch house would have been legally indistinguishable from a judgment upon a debt of the other branch. Both would have been against the same defendants, jointly and severally; and any assets of either branch within the jurisdiction would have been liable on either judgment to seizure upon execution, or to be reached by a bill in equity if not subject to levy. No branch of the law has ever recognized, so far as I can discover, any right to such a marshaling of the assets of the different branches of a single copartnership as is here contended for, though the different branches have a different business name, where the partners carrying on the whole business are the same. Such is the opinion expressed by WALLACE, J., in *Re Nims*, 18 N. B. R. 91, 92. The judgment of the circuit court in that case (16 Blatchf. 439) proceeded upon facts and considerations quite dissimilar and inapplicable to the present case. The application is denied.