(Hamilton County Common Pleas, 1901).

## THE FIRST NATIONAL BANK v. W. C. COCHRAN, ASSIGNEE.

(1.) Three partners, having separate factories for the manufacture of different classes of goods, having separate sets of employes, keeping their accounts, assets and creditors entirely distinct, but having their offices together, did business under two different firm names, and made an assignment for the benefit of creditors. A creditor holding separate notes in the name of both firms sued for an allowance of its entire claim against the assets of both concerns. *Held:* Such creditor can prove against the assets of each firm in the proportion in which it holds such paper and has given credit.

(2.) The statutes so changed the common law, that in Ohio, at least for the purpose of distributing its assets among its creditors, a firm is a legal enity distinct from the members composing it.

(3.) For the purpose of substanial justice, equity will subject the funds of the partnerships to the liabilities of the respective firms to which credit was given.

---

PFLEGER, J.

Thomas C. Pearce, Harry T. Atkins and Henry Pearce carried on two kinds of business in this city—one for the manufacture of warp and cotton goods, under the firm name of Henry Pearce's Sons, and the other for the manufacture of articles of harness, etc., under the firm name and style of Pearce, Atkins & Co. The concern of Henry Pearce's Sons consisted of the Deercreek Mills, located at Fifth and Lock streets, and was purchased after that of Pearce, Atkins & Co., from the firm of Gould, Pearce & Co., which had been in existence since 1847. The mill of Pearce, Atkins & Co. was located at Plum and Canal streets. Each establishment had its separate employes. All three partners were equally interested in both concerns. One of them was assigned to one concern and the other two to the other business. The offices of both firms were kept in the same building and in the same general room; they employed the same janitor at the office and the same bookkeeper, and divided their expenses, but the books of account were kept separate and distinct, not only for the purpose of ascertaining how they stood at the end of each year, but as different ventures, having a separate set of creditors and customers. Sometimes cash balances and small merchandise or small supply bills would appear between the firms, without interest being charged or credited thereon; some few transactions in real estate took place between the partners and the different firms, and some machinery belonging to one firm was used by

the other without any charge being made for the use thereof. None of these items, or indeed all of them together were, in the judgment of the court, of sufficient frequency, to indicate or warrant the finding, as a matter of fact, that the partners, among themselves, recognized and in fact did business as one concern.

There certainly was no concealment on the part of the three partners as to their connection with and the fact of their interest in the two partnerships. Their object and intent evidently was to keep them separate and distinct.

Both concerns failed on the same day joining in one deed and making an assignment to W. C. Cochran in behalf of the three individuals and in behalf of each of said firms. The assignee at some trouble and expense has kept the assets and liabilities separate, and has declared dividends separately.

The First National Bank of this city purchased notes amounting to $1,223.16, signed Pearce, Atkins & Co., and $23,312.88, signed Henry Pearce's Sons, and filed its claims for both sums against each concern, demanding, however, a dividend on these two sums once only, but upon all the assets of both concerns. In other words, the bank sought to have the assets of both concerns put into one fund, and have all the creditors of both establishments share equally with the others. If distributed separately, the assets of Pearce, Atkins & Co. will probably pay forty-five cents, and those of Henry Pearce's Sons about fifteen cents on the dollar. The assignee allowed or was willing to allow as valid claims these notes signed respectively, but rejected them as credits against both concerns jointly. Thereupon instead of raising the question on distribution the First National Bank demands the assets of the two concerns jointly.

The question at issue is whether a creditor who took commercial paper signed in the name of one firm can share *pari passu* with the creditors who dealt exclusively with the other firm.

Strange as it may appear, few cases can be found involving the exact point. Many have been cited by counsel on both sides as throwing some light upon the question, and after an examination of these and other cases certain contentions have been made which may be disposed of briefly.

A person may by adopting a firm or individual name separate his business into parts or branches, keeping it absolutely distinct as to the nature and kind of traffic carried on, the places where the same is located, and yet because these assets can only be reached by an action against him, this division and separation will not affect creditors, no matter what may

have been his intention or his conduct (*Ex parte Wilson*, 7 Ch. App., 490; Bates on Partnership, section 107).

So it is true of the two firms which have members in common, but which are not entirely constituted of the same persons, having either one more or one less than the other, no matter how close may have been the relations between them, as long as there is no different holding out, they are in fact and in law separate and distinct concerns, having separate creditors entitled to the funds of the partnership which they trusted respectively. *Lewis* v. U. S., 92 W. S., 618; *In re Vetterlein*, 44 Fed. 61; *Adams* v. *Brown*, 16 Ohio St., 75; *Bates on Partnership*, Sec. 108; *Cushing* v. *Smith*, 43 Tex., 261; *Moore* v. *Gano*, 12 Ohio, 300; *Bullock* v. *Hubbard*, 23 Cal., 495.

And where such firms openly conduct business in the same name and with a common member or agent it may be shown by the creditors that the credit was obtained upon the faith of one of the two firms (*Fosdick* v. *Van Horn*, 40 Ohio St., 459; *Mechanis's Bank* v. *Dakin* 24 Wend., 411; *Hastings* v. *Hibbard*, 48 Mich.,452).

And two firms composed of exactly the same members may do business under different firm names and in different places; yet if one is a branch of the other, or one business is dependent upon the other, they are in fact and in law one concern ( *In re Williams*, 3 Woods, 493; *Campbell* v. *Colorado Coal Co.*, 9 Col., 60).

It must be conceded that the mere separation of assets, the engagement of separate employes, the keeping of separate establishments and separate books of account, or the mere intentions of the parties, can not alone make them separate and distinct concerns, although these facts collectively may aid in arriving at the other conclusion. Nor can the acts of the assignee, subsequent to the dealings of the contracting parties, change in any way the relations of such parties.

The greatest difficulty in determining the question arises by reason of the construction placed on the partnership relation by the common law. The common law recognized but two kinds of persons—the one created by nature and the other created by the sovereign. A conventional being, such as a partnership, being created by the agreements of the persons, although a commercial necessity, was never authorized and never recognized. It was not considered a thing distinct from the members composing it, but a mere name or description of a species of mutual agency having a convenient symbol or abbreviation to include all (*Chambers* v. *Sloan*, 19 Ga., 84).

Actions by and against the firm were brought by and against the partners and executions for firm debts were levied upon the separate property of the partners without resorting at first to the partnership assets (*Hughes* v. *Gross*, 166 Mass., 61; *Alexander* v. *Jones*, 90 Ala., 474; Bates on Part., sec. 171, 5 Am. Law Review, 918).

Therefore at common law a partnership was not regarded as a legal being or entity but a mere relation of the partners and one which could not sue or be sued in its firm name. (*Glasscock* v. *Price*, 92 Texas, 273; *Harris* v. *Visher* 57 Ga., 232; *Hughes* v. *Gross*, 166 Mass., 65; *Gill* v. *Hunt*, 35 Minn., 357; *Hallowell* v. *Blackstone*, 154 Mass., 363).

And while courts of law could grant no relief to firm creditors, equity gave firm creditors a remedy by payment out of partnership assets in preference to individual creditors derived through the rights of the individual members of the firm by way of subrogation as a sort of preference because of the non-recognition of the firm as such (*Willis* v. *Barron*, 143 Mo., 450; *Case* v. *Beauregard*, 92 U. S., 124; *Siglar* v. *Knox*, 8 Ohio St., 511). This derivative equity could not be extinguished by insolvency (*Bartlett* v. *Meyer*, 65 Ark., 293).

Authorities may be found showing that this has been carried to the extent of permitting joint and several creditors to share equally with partnership creditors (*Hoare* v. *Oriental Bank*, L. R., 2 Appeal Cases, 589; *Saunders* v. *Reily*, 105 N. Y., 12; *Citizens Bank* v. *Williams*, 128 N. Y., 82; *Rogers* v. *Mernada*, 7 Ohio St., 179; *Coachman* v. *Maupin*, 78 Ky., 33).

The weight of authority now appears to be that as the partner has no equity to have joint assets assigned to joint debts which are not partnership liabilities, the mere fact that a claim is against all the partners jointly does not entitle it to share in the partnership assets if it is not a liability of the firm (Bates on Part., sec. 829, and authorities there cited; *Shedd* v. *Wilson*, 27 Vt., 478; *Freeman* v. *Campbell*, 55 Cal., 197).

Nor can the individual creditor of a partner prove against the assets of the firm for an amount owing to the individual partner by the firm in competition with the lien of the other partners, to have the assets applied to partnership creditors, unless such partner carries on another business independent of the firm and becomes a creditor in respect to that business, or where two firms having members in common and having distinct trades, and one firm is a creditor of the other for a trade debt, the proof may be made (Bates on Part., secs. 836 and 837).

The law of Scotland, continental Europe and the entire civil law regarded the firm as a separate person capable of suing and being sued by its own members and having distinct rights and interests (*Tossey* v. *Church*, 6 Watts & S., Pa., 469; Story on Part., sec. 365; Bates on Part., sec. 172.)

Louisiana, following the civil law, has universally so held (*Liverpool Co.* v. *Ager* and *L. Long*, 14 Fed., 615, La.; Succession of Pilcher, 39 La. Ann., 362).

Judicial declarations that a firm is a distinct entity are now frequently to be met with (*Roup* v. *Herron*, 15 Neb., 80; *Newton* v. *Heaton*, 42 Ia., 596; see cases cited under sec. 171 Bates on Part).

In *Walker* v. *Wait*, 50 Vt., 668, it was said that the only difference is a techinal one—that plaintiff, as a partner could not be on both sides of the record. In *Tossey* v. *Church*, *supra*, it was said that we ought to carry the principle the same length by holding firm property liable to execution as that of a corporation. In *Alexander* v. *Jones, supra*, an eminent jurist approved as a better doctrine of abstract law that which credits to partnerships something of an identity like that of corporations, in order that contracts and actions between firms and their members may in no wise be affected by the view of a common law membership. And in *Burrows* v. *Leach*, 74 N. W., 296 (Mich., 1898), it was said that the harmony of our jurisprudence would be more perfect and matters more simplified.

And in the states of Alabama, California, Iowa, Wisconsin, Nebraska, Ohio and Wyoming laws have been passed permitting actions for and against partnerships doing business under a common name. See code sections, respectively: Cal., sec. 388; Iowa, sec. 468; Wis., sec. 2612, p. 1809; Nebraska, sec. 5614, 15; Ohio secs. 5011, 5042; Wyo., sec. 3485.

And it has been held that such legislation has made a partnership an artificial person or a distinct entity (*Williams* v. *Keith*, 18 Ohio St., 145; *Rosenbaum* v. *Hayden*, 22 Neb., 148; *Fitzgerald* v. *Grimm*, 64 Ia., 261). The latter case was followed in *Brownell* v. *Stebbins*, 83 Ia., 425, and *Ruthvin* v. *Beckwith*, 84 Ia., 718.

Such acts were strictly construed as in derogation of the common law by reversing a judgment rendered in the wrong partnership name in *King* v. *Rantlett*, 33 Cal., 318. And in *B. & M. R. R. Co.* v. *Dick*, 7 Neb., 243, by enforcing security for costs.

Under Revised Statutes of Nevada (sec. 3692), Minnesota (sec. 5177) and Wisconsin (sec. 2612) actions were authorized against persons associating as partnerships in their joint name until the names of the several partners

were ascertained. In *Gale* v. *Townsend,* 45 Minn., 360, it was held that this section did not constitute a firm, a distinct person or entity, similar to corporations, because it referred to th eassociates and not to the association. Judge Hammond refused to recognize limited partnerships under the Pennsylvania act as artificial citizens entitled to sue in the United States courts in order to acquire jurisdiction over organizations that were not corporations, strictly so-called, in *Imperial Refining Co.* v. *Wyman,* 38 Fed., 574.

There are five cases which appear to me applicable to the case at bar.

*Bank of Portugal* v. *Waddell,* 5 App. Cas., 162, was a case of two persons doing business in Portugal as Hopper Brothers, purchasing wines from producers, and in London as Hopper & Son, selling the same wine together with others. Separate books were kept and a commission charged between the firms. Both firms went into bankruptcy and the Lord Chancellor held that they were one firm carrying on both businesses, that the Portuguese creditors were entitled to share in the English assets only, after the English creditors had received the same percentage on their debts as the Portuguese creditors, and that all the firm creditors were entitled to share equally.

In *re Vetterlein,* 44 Fed., 57, two partners did business in New York under the name of Vetterlein & Sons, and became indebted to the firm of Vetterlein & Co., in Philadelphia, composed of the same members. Both went into bankruptcy, and the assignee of the Philadelphia firm brought an action to prove this debt against the assignee of the New York firm, and the supreme court held that the same could not be allowed, and that the assignee ought to take no notice of this indebtedness. The opinion indicates that the two establishments were branches, and that it was but a single co-partnership. It is, however, the strongest case found in favor of plaintiff's contention.

On the other side, *In re Nimms,* 16 Blatch, 439, was cited.

Nimms and Long were partners under the name of O. L. Nimms & Co. up to May 13, 1871. They dissolved owing debts and having no assets. On August 12, 1871, the same partners organized another firm under the name of O. L. Nimms, agent, and then failed. The creditors of the first firm sought to prove up their claims against the assets of the second firm. The registrar in bankruptcy refused to allow this claim, holding that creditors of the former partnerships were not creditors of the last firm, and that the creditors of the last co-partnership alone were authorized to prove debts. This case was specially distinguished from *In re Vetterlein* in 44 Fed., 57.

*Buckner* v. *Calcote,* 28 Miss., 432, is an interesting case, covering 167 pages of the report. Three partners did business in three separate firm names and in different states. One died and the other two became bankrupts. One applied in Mississippi for a discharge from his individual and partnership debts and was discharged. Among his assets he returned a debt owing the Mississippi firm by the other two firms. This debt was sold to the plaintiff, who brought suit eleven years after the discharge to subject the individual property of the two partners to the payment of his claim. A demurrer to the petition was sustained. The court found great laches; that the statute of limitations has run against the debt; that the adjudication in the bankruptcy proceedings was not a personal judgment, and that the claim was not a debt against the bankrupt. The court in its syllabus held "that where two or more firms composed of the same members are entirely distinct and separate, a debt due from one to the other is as to the creditors of the latter considered as assets of the latter and a trust fund for the payment of the creditors who have dealt with it in case of the bankruptcy of the firms only and when the firms and the trades are perfectly distinct," for the purpose of distributing the assets.

*Terry* v. *Platt,* 1 Pennewill (Del.), 192, was a case of two persons doing business under two different firm names and recites the charge to the jury by a nisi prius court, that if the jury were satisfied from the proof that there were two distinct and independent partnerships as alleged the plaintiff was not entitled to recover.

*Lathrop* v. *Snell* 6 Fla., 750; *Bullin* v. *Forst,* 55 Ga., 546; *Sparhawk* v. *Drexell,* 12 National Bankruptcy Register, 468, *Haines Estate,* 176 Pa. St., 365, are all interesting cases which may be read with profit.

As it is practically conceded that were the civil law regarding partnerships in force in Ohio the problem might more readily be solved, it appeared to me that the act of February 27, 1846, passed by our legislature allowing partnerships to sue and be sued without alleging the individual names, was a complete adoption of the Roman Law, especially when our supreme court, in *Whitman* v. *Keit, supra* said:

"The purpose of this statute was to give to every partnership a status in court as a person, an artificial, or ideal person, it is true, but still a status of a person, who is regarded as the owner of the partnership property and is responsible for the partnership debts and liabilities of every kind."

Recently, however, our supreme court has made two expressions which throw considera-

ble doubt upon such a construction. In *Byers v. Schuppe*, 51 Oh ioSt., 314, is said: "The members of a partnership do not form a collective whole, distinct from the individuals composing it; nor are they collectively endowed with any capacity of acquiring rights or incurring obligations. The rights and liabilities of a partnership are the rights and liabilities of the partners (1 Lindley on Part., 5). It is not a creation in which the identity of the individual members is merged and lost in seeking to enforce against them the obligations of the firm. A partnership is not in our judgment a legal entity, *having as such a domicile or residence* separate and distinct from that of the individuals who constitute it. To what extent residence may be affirmed of a partnership as such was considered in *Fitzgerald v. Grimmell*, 64 Ia., 261. In the dissenting opinion there is much force, and we cite the same with our concurrence."

In *Volksblatt Co. v. Hoffmeister*, 43 Bull., 261, our supreme court said: "A corporation is not in reality a person or a thing distinct from its constitutent parts and the constituent parts are the stockholders as much so in essence and reality as the several partners are the constituent parts of the partnership."

Those expressions do not appear in the syllabus of either case, and neither refers to or overrules the case of *Whitman v. Keith*. In the Byers case the language was partly a quotation from Lindley on Partnership, and was used to apply to the *domicile or residence* of a partnership. In the Hoffmeister case the language of Judge Spear is much stronger and is purely a metaphysical distinction between the words "person," "thing," and "'entity,'", and used relatively between the company and its stockholders. If we were to concede that a partnership under section 5011, Revised Statutes, is not an entity or a person, technically speaking, but a mere status or relation it may nevertheless sue and be sued by its firm name without alleging or proving the names of the individual members thereof; under section 5042 it may be served as such, and under section 5381 an execution on a judgment against the partnership by its firm name may be satisfied out of the partnership property.

The rights and obligations of a partnership as such may therefore be enforced in its firm name in an action at law in this state. Otherwise the above legislation would be meaningless. If it may, then its joint obligations are recognized as separate and distinct acts as in the civil law, at least so far as distribution of its assets among its separate creditors is concerned.

And if there were any doubt about this, it seems to me that as "in equity all contracts and dealings between such firms of a moral and legal nature are deemed obligatory though void of law, and as courts of equity in all such cases look behind the form of the transaction to their substance and treat the different firms for the purpose of substantial justice, exactly as if they were composed of strangers or were in fact corporate companies." (1 Story Eq. Jur., secs. 679-81), and the case at bar is in equity, there should be no obstacle in giving such relief, provided it would be just and equitable to recognize each of these firms as separate and distinct for the purpose of distributing its assets to its respective creditors.

The reason for such a distribution is "that the funds are to be liable on which the credit was given" (3 Kent's Com., p. 64 and 65). "And a partnership debt is incurred for the benefits of the partnership and its property, and consists in whole or in part of what has been obtained from its creditors." (*Forsyth v. Woods*, 11 Wall., 486; *Roup v. Herron*, 15 Neb., 80; *Commercial Bank v. Bank* 11 Ohio, 451; *Weaver v. Sibley*, 46 N. H., 191; *Rogers v. Meranda*, 7 Ohio St., 186). And as was stated by Judge Rapallo in *Menagh v. Whitwell*, 52 N. Y., 612: "A partnership in its relation to its creditors is placed upon the basis of having its own creditors and possessing its own property, which it applies to the payment of its debts and after this work is done there is resolution of the body into its elements."

The First National Bank knew before it accepted the paper in question that there were two different firms so-called, although composed of the same partners, as it demanded financial statements of each partnership and thereafter took most if not all of the notes now involved. By purchase of the separate paper it gave credit to the so-called separate firms, looked to the assets of each for its pay and could have enforced its claims by judgment and execution against the assets of each respective partnership.

As against the creditors of the other partnership, it should, in my opinion, be compelled to look to the assets of the respective firms which signed the paper, and the assets should be distributed to the creditors of each of such separate and distinct firms.

Without going into details regarding the technical points made by the defendant that this court had no jurisdiction, that the remedy of the plaintiff is to raise this question upon distribution, and that the plaintiff demands double payment and a specific allowance, I do not believe them well taken. Besides, the defendant has submitted this question upon the

merits, and a determination by this court will more speedily settle all questions of distribution by a decision on the merits.

The above conclusion 'has been reached after some hesitation and uncertainty. If the expressions of our supreme court in the Byers and Hoffmeiseter cases are applicable to the question of distribution of assets between contending creditors, perhaps a different conclusion should have been reached. The question merits a determination by our highest courts.

As the assignee has allowed, or is willing to allow, the claims for the amounts specified in the notes against the respective firms whose names are attached thereto, a decree may be entered in favor of the defendant at plaintiff's costs.

*Stephens & Lincoln* for First National Bank.

*Follett, Kelly & Follett, Boyce & Boyd* and *M. C. Slutes,* for the Creditors

*W. C. Cochran,* for the Assignee.