ALBERT D. CUSKADEN et al., complainants-respondents,

v.

MILLARD F. STEELMAN et al., defendants-appellants.

[Argued November 22d, 1917.  Decided March 4th, 1918.]

1. A testator created a trust fund for the benefit of his wife and three children, and directed that on the death of his wife the share (of income) paid to her be equally divided among his children or the survivor or survivors of them during their lifetime.—*Held*, following the settled rule that survivor means survivor at the death of the life tenant, and that taking the whole will into consideration the word is plainly used in no other sense. *Stout* v. *Cook*, 79 N. J. Eq. 573, followed.

2. By a codicil to his will a testator revoked a bequest to a son and directed that the share of his estate given and devised in trust to his said son should be held in trust for the son's children.—*Held*, that the bequest to the children includes the share held for the widow, which after her death was to be divided among and paid to the testator's children or the survivor or survivors of them during their lifetime.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming, whose opinion is reported in *ante* p. 93.

The bill is for the construction of the will and codicil of Derestus B. Steelman.  The essential parts are as follows:

"Second :. It is my will and I do direct that my beloved wife, Marietta Steelman, be permitted to occupy my home, known as No. 12, South Ohio Avenue, in said Atlantic City, during her lifetime, and I hereby make a charge upon my estate the cost of the up-keep, carrying charges and all municipal assessments which may be imposed upon my said home during the lifetime of my said wife.

"Third : I give and devise unto Albert D. *Cuskaden* and Albert J. Feyl all my property real, personal and mixed, subject to item two hereof, in trust as follows :

"A. To manage, sell, invest and reinvest the same, and to pay the rents, issues and profits thereof to my said beloved wife, Marietta Steelman, and my children, John D. Steelman, Annie M. Cuskaden and Mil-

lard F. Steelman, during their respective lifetimes, share and share alike, hereby directing my trustees and executors to pay to each, his or her respective share monthly, beginning six months after my decease.

"B. Upon the death of my said wife I direct that the share theretofore paid to her shall be equally divided *among and paid to my said children, or the survivor or survivors* of them during their lifetime..

"C. Upon the death of any or either of my said children, leaving issue him or her surviving, then and in such event I direct that such share of my estate upon which he or she shall have been receiving the *rents, issues and profits,* shall become the absolute property of the issue of such deceased child; should either of my said children die without issue, him or her surviving, then and in such event I direct my executors and trustees to pay the share theretofore paid to said deceased child to the survivor or survivors of my said children, share and share alike during the *life or lives* of said survivor or survivors.

"D. Should any or either of my said children die without issue leaving him or her surviving a wife or husband then and in such event I direct that one-half of such share of my estate upon which he or she shall have been receiving the rents, issues and profits, shall become the absolute property of such wife or husband, and that the rents, issues and profits arising from the other one-half of said share theretofore paid to said *deceased child to be paid to the survivor or survivors of my said children,* share and share alike, during the life of said survivor or survivors.

"First: I do hereby ratify and confirm my said last will and testament in all respects, save so far as any part thereof shall be revoked or altered by this present codicil, and in particular, save so far as the *same relates to the giving and devising of any part or portion of my* estate in trust for my son, John D. Steelman, during his lifetime, as to which particular I do hereby revoke and alter my said will as follows: It is my will and I do direct that the part of share of my estate in and by my said will given and devised in trust to my said son, John D. Steelman, shall be held in trust for Edna Feyl and Marion Steelman (children of my said son, John D. Steelman), and the rents, issues and profits thereof paid to them during the lives of my beloved wife, Marietta Steelman, and my children, Annie M. Cuskaden and Millard F. Steelman, or the survivor of them, and upon the happening of the last mentioned event the said Edna Feyl and Marion Steelman shall be entitled to receive the principal so held in trust for them, share and share alike.

"Second: Should either the said Edna Feyl or Marion Steelman die without issue before receiving her share of said principal, then and in such event the share of said decedent, 'both principal and interest, shall be paid to the survivor in accordance with the terms of my said will and of this codicil thereto."

The will is dated May 24th, 1912; the codicil, February 18th, 1914. Annie M. Cuskaden, the testator's daughter, died March 30th, 1916; the widow, December 5th, 1916.

*Mr. George A. Bourgeois,* for the respondents Millard E. and Fred S. Cuskaden.

*Mr. Lewis Starr,* for Edna Feyl, individually, and as guardian of Marion Steelman.

*Mr. Clarence L. Cole* and *Mr. Millard F. Steelman, pro se,* for the appellants.

The opinion of the court was delivered by

SWAYZE, J.

The questions now to be determined relate to the distribution of that part of the estate which was given in trust for the widow for life. No question was made or argued as to the devise and bequest relating to the house contained in the second item of the will, and no questions are raised with reference thereto.

The first question is whether the income of the trust fund bequeathed in the third item, clause B, was payable after the widow's death in three shares, or whether Mrs. Cuskaden's children failed of any right thereto by reason of the death of their mother before the widow. The words of clause B are plain enough. The testator directs that the share theretofore paid to his wife shall be paid to his children or the survivor or survivors of them during their lifetime. It is settled that in such a case the word "survivor" means survivor at the death of the life tenant. *Stout* v. *Cook,* '79 *N. J. Eq. 573,* had been decided only a few months before this will was made. We there said that this meaning, which is the ordinary and natural one to be given to the words, must prevail unless upon taking the whole will into consideration the words are plainly used in some other sense. The only question open to us now is whether the words are plainly used in some other than the natural and established sense. But for the opinion of the learned vice-chancellor, we should have thought this question no longer open since the decision in *Ashurst* v. *Potter,* 53 *N. J. Eq. 608;* 54 *N. J. Eq. 699,* and the decision above cited in *Stout* v. *Cook.* The argument in those

cases for departing from the natural and established sense of the words was quite as strong as it is in the present case, and we should content ourselves with deciding this case on the authority of those, were it not for the respect we entertain for the opinion of the vice-chancellor. This has induced us to examine the will with greater care, but without any different result. The only ground for asking us to attribute an unusual meaning to the word "survivor," is that the obvious scheme of the will is to secure equality, and that this cannot be done by attributing the plain and usual meaning to the words. The premise is not sound. It cannot be claimed that the testator meant to secure equality among his children, since it is apparent upon the face of the will itself that the ordinary sense of the words would not lead to equality among the children in the probable event which has in fact happened—the death of one child before the mother. To say that the words must be used in an unusual sense to produce an equality which does not appear to have been the testator's intent until the unusual sense has been adopted, is clearly to argue in a vicious circle. And if we consider will and codicil together, as we must, in ascertaining the testator's final wish, we at once find that one son is totally disinherited, and the rights of his two children, the testator's grandchildren, in the fund created by clause B are subject to three life estates—their grandmother, their uncle and their aunt, while the rights of the other grandchildren, children of Mrs. Cuskaden, are subject only to two life estates, their grandmother and their mother.

The respondent seeks to escape from this difficulty by contending that what the testator desired was equality between the different stocks; and that the word "children" should be read "*stirpes.*" The extraordinary results of this proposition appear if we in fact make the change. Clause B will then direct that after the widow's death the share (income only) theretofore paid to her "shall be equally divided among and paid to my said *stirps*" (or, perhaps, we must say "*stirpes*") "or the survivor or survivors of them during their lifetime" (*i. e.,* necessarily, on this construction the lifetime or the *stirps* or *stirpes*). The very statement shows the strain, not to say more, of the construction

contended for. But the testator says, "my children." The construction which would substitute "my *stirps*" would produce a result which would not correspond with the respondent's wishes; and the substitution of "my *stirpes*" would lead to a conflict between the singular pronoun and the plural word; no man can sensibly speak of "my stocks." The "stock" is all his own.

But to go further: The testator directs that the share be paid "during their lifetime." It would be a great strain to speak of the lifetime of a stock; if it were permissible, it would lead to the difficulty that there would be no bequest of the *corpus*. When the stock died, the *corpus* would escheat. Moreover, the survivor is not by the will declared to be a survivor of a stock but "survivor or survivors of them." The pronoun can only refer to "children" as its antecedent.

It seems almost a travesty to make the actual substitution of "*stirps*" for "children." We need not dwell on it.

We pass to clause C. That clause directs that upon the death of a child leaving issue, the share upon which the child shall have been receiving the rents, issues and profits shall become the absolute property of the issue. No provision is made for any part of the estate upon which the child has not been receiving the rents, issues and profits. Such portion—in this case the fund in controversy upon which the widow received the rents, issues and profits until after Mrs. Cuskaden's death—is not provided for, and if the respondent is right, the testator died intestate as to that. One reason of the testator for not having a child who died before his widow share in the fund, probably was that when that child's share became the absolute property of the issue, it became free from the liability imposed by the first item on the estate to meet the carrying charges of the home. These charges falling on the other shares, the testator naturally thought those shares ought to be rewarded by sharing in the fund provided for the widow.

If we were at liberty to indulge in a guess at the testator's intent as distinguished from the meaning of the words he used, we think a better guess than the respondent's would be that he meant to take care of his children as long as they lived by pro-

viding a trust fund for their benefit, which might be increased in the case of survivors on the death of the widow, while the portions of grandchildren might vary, depending upon whether their parents survived the testator; and those who failed to profit by an increase of the fund on the death of the widow, would have the advantage of coming into the absolute ownership of their share and escaping the carrying charges of the home, at an earlier date. We are clear that the vice-chancellor fell into error in this respect.

As to the codicil we find little difficulty. It plainly directs that the trust fund created by the will for John D. Steelman be held in trust for his children, and the rents, issues and profits paid to them during the lives of the testator's widow, Mrs. Cuskaden, and Millard F. Steelman. The only question is whether this trust fund includes a share of the fund held for the widow. We see no difficulty in holding that the part or share of the estate in and by the will given and devised in trust to John D. Steelman includes a share of the fund in which his mother had a life right and he had a contingent remainder. The intent of the codicil was to put his daughters in his place until the termination of the life estates. In this respect, and as to counsel fees and costs, the decree should be affirmed. In other respects it should be reversed.

*For affirmance*—None.

*For reversal*—GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS—11.