FRANCIS V. BALCH & others *vs.* WILLIAM H. PICKERING & others.

Suffolk.    June 27, 1891. — September 3, 1891.

Present: ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Will — Residuary Clause — Aleatory Gift.*

A testator, by his will, after giving his only son one half of one seventh of the income of a trust fund, and each of his six daughters one seventh and one sixth of one half of one seventh of the same, provided that, " if any one or more of my said daughters or son shall decease, leaving no child or children living at the time of such decease, the principal sum of which such deceased daughter or son may have had the income for life shall be distributed to the surviving daughters and son; that is to say, the income for their several lives, and the principal to their children, as above provided and arranged." The son and the daughters survived the testator, and the son then died leaving one child, and subsequently one of the daughters died childless. *Held,* that the son's child was entitled to

share in the principal of the share of which the deceased daughter received the income; and that this right was not modified by a codicil which increased the son's share of income to one seventh.

BILL IN EQUITY, filed in this court on February 13, 1889, by the trustees under the will of Daniel Hammond, for instructions as to the disposition of a trust fund. The case was heard and reserved for the consideration of the full court, and was as follows.

The will of Daniel Hammond, which was dated March 4, 1854, after various legacies and a provision for three annuities, contained the following, which alone is material:

"Fifth. Subject to said three annuities, and as the same shall be extinguished, I direct and appoint that my trustees, annually, or at such less periods of time as the receipts of income will permit, shall pay and distribute to my six daughters, each one seventh and one sixth of one half of one seventh, share and share alike, of the entire income and interest of my estate, for and during the term of their several natural lives, as and for their sole and separate use, devested of any and every marital right of any husband present or future which they or either of them now or hereafter may have, but not subject by them or either of them to anticipation by way of sale or otherwise; deducting, however, from the share of each all and every sum with which they may severally be charged upon my books or papers as an advancement, so that my daughters may have an equal interest in my estate. And I direct that the income of one half of one seventh of my estate shall annually, or at such less periods of time as the income of my estate will permit, be paid by my trustees to my son George Hammond, without any deduction for advances heretofore made to or for his use, which difference between him and my daughters is made as I have heretofore advanced and paid for him and on his account large sums of money. And I further direct and appoint that my trustees shall convey, assign, and pay over to the children of my daughters and son, from time to time, as such decease shall severally occur, the principal sum or share of which the income for life is herein to said daughters and son severally given. And if any one or more of my said daughters or son shall decease, leaving no child or children living at the time of such decease, the

principal sum of which such deceased daughter or son may have had the income for life shall be distributed to the surviving daughters and son; that is to say, the income for their several lives, and the principal to their children, as above provided and arranged."

By the fourth codicil to the will, dated November 27, 1868, the testator provided as follows:

"First, I give and devise to my son George Hammond one seventh instead of and as a substitute for the one half of one seventh given to him in and by my said will; the effect of which is to deduct from the provision therein made for my daughters severally one sixth each of one half of one seventh."

George Hammond, the son of the testator, and his six daughters, one of whom was Sally S. Pickering, all survived him, and afterwards George died, leaving a son, the defendant George Francis Hammond. Subsequently Sally S. Pickering died, leaving no child or children or issue living at the time of her decease, but leaving George Francis Hammond and her five sisters and their issue surviving.

George Francis Hammond contended that he was entitled to one sixth part of the share of the estate of his grandfather, Daniel Hammond, of which his aunt, Sally S. Pickering, late deceased, had the income during her life.

The surviving sisters of Sally S. Pickering and their issue contended that they, the sisters, were entitled each to one fifth part of the income of the share of the estate of Daniel Hammond of which the said Sally S. Pickering had the income during her life, and that their children would be entitled to the principal sum after their decease.

*R. Olney*, for the surviving sisters and their issue.

*H. G. Allen & W. R. Howland*, for George Francis Hammond.

HOLMES, J. This is a bill, brought by the trustees under the will of Daniel Hammond, for the construction of the latter part of the fifth article of his will. The testator left one son and six daughters. One daughter, Sally S. Pickering, has died, leaving no child living at the time of her death. The son had died before her, leaving one child, the defendant George Francis Hammond. The question is whether this defendant is entitled to a share in the principal of the share of which Sally Pickering

received the income. The words to be construed are "if any one or more of my said daughters or son shall decease, leaving no child or children living at the time of such decease, the principal sum of which such deceased daughter or son may have had the income for life shall be distributed to the surviving daughters and son; that is to say, the income for their several lives, and the principal to their children, as above provided and arranged."

The literal meaning of the words is, that, when a child of the testator shall die leaving children, the latter shall receive the principal sum of which their parents had received the income, and thereupon their interest in the joint fund' shall cease, although, as the result of such cessation, they may happen to lose the secondary and accidental advantage of sharing in the division of some other child's share if another child of the testator should chance to die later and leave no children of his or her own. See *In re Horner's estate,* 19 Ch. D. 186; *In re Benn,* 29 Ch. D. 839.

On the other hand, there is the same unlikelihood that the testator intended an aleatory gift, which has led to the statutory construction against joint tenancies. Probably the testator did not have it in mind to deprive any set of grandchildren of this secondary advantage because of the previous death of their parent. If that is the result of the words used, it is an accidental result, not the object of his disposition. The general purpose manifested is that the grandchildren should stand as well with regard to the principal as their parent stood with regard to the income, and that the division between the different branches of the testator's family should be equal, taking advances into account. It should be added, that, so far as the present question is concerned, the different branches stand exactly alike, — the children of daughters equal *per stirpes,* and the child of the son equal to the children of a daughter. If the literal meaning of the words is adopted, then, if the last sister who died should leave no children living, the limitation would fail altogether, and there would be an intestacy, as the fifth article is a residuary clause.

Although I have not been able to free my mind from doubt, the latter considerations have prevailed with the court in favor

of equality of distribution, and against the disinheritance *pro tanto* of grandchildren whose parents were not living.  We read the last words of the fifth article as meaning that the income of their proportion of the deceased child's share shall be paid to the other children of the testator who are alive, and that the principal of a like proportion shall be paid to the children of his other children who are dead, as well as to the children of the surviving children when the latter shall die.  Whether the interest of grandchildren would be devested by death before the death of the childless daughter, we need not determine. ' See *Minot* v. *Taylor*, 129 Mass. 160; *Bowker* v. *Bowker*, 148 Mass. 198; *In re Bowman*, 41 Ch. D. 525.

We cannot agree that the effect of the will is modified by the fourth codicil, giving to the testator's son George one seventh, instead of the one half of one seventh, given him by the will.

*Decree accordingly.*