ALBERT D. CUSKADEN et al., trustees,

*v.*

MILLARD F. STEELMAN et al.

[Submitted July 19th, 1917. Determined September 12th, 1917.]

1. Under the testamentary provisions in this case—*Held*, that the wife's one-fourth share of income should be divided, one-third to the children of the daughter, one-third to the children of the son, and one-third to the son.

2. Under a bill for the construction of a will—*Held*, that instructions touching future contingencies which may never arise will not be given.

---

On final hearing on bill for construction of will of Derestus B. Steelman, deceased.

*Bourgeois & Coulomb,* for the complainants.

*Mr. Clarence L. Cole,* for Millard F. Steelman, the defendant.

*Mr. Lewis Starr,* for the defendant, Edna Feyl, individually and as guardian *ad litem* of Marion Steelman.

*Mr. Joseph A. Corio,* for Millard E. Cuskaden and Frederick E. Cuskaden.

LEAMING, V. C.

In this suit the executors and trustees under the last will and testament of Derestus B. Steelman, deceased, seek a con-

struction of his will to the end that they, as executors and trustees may receive the aid of this court in performing the duties arising from their trust.

Testator died November 29th, 1914, leaving a will bearing date May 24th, 1912, and a codicil to that will bearing date February 18th, 1914.

At the dates of both the will and the codicil and also at the date of the death of testator, his next of kin were his three children, John D. Steelman, Annie M. Cuskaden and Millard F. Steelman. Marietta Steelman, testator's wife and mother of his children, also survived him. At the dates of the will and codicil and at the date of testator's death he had two grandchildren, children of his son John D. Steelman, named respectively Edna Feyl and Marion Steelman, both of whom are still living, and also two grandchildren, the children of his daughter Annie M. Cuskaden, named respectively Millard E. Cuskaden and Frederick E. Cuskaden, both of whom are still living. Testator's son Millard F. Steelman is still alive and has never married.

The provisions of the will material for present consideration are as follows:

"Second. It is my will and I do direct that my beloved wife, Marietta Steelman, be permitted to occupy my home, known as No. 19 South Ohio Avenue, in said Atlantic City, during her lifetime, and I hereby make a charge upon my estate the cost of the upkeep, carrying charges and all municipal assessments which may be imposed upon my said home during the lifetime of my said wife."

"Third. I give and devise unto Albert D. Cuskaden and Albert J. Feyl all my property real, personal and mixed, subject to item two hereof, in trust as follows:

"A. To manage, sell, invest and re-invest the same and to pay the rents, issues and profits thereof to my said beloved wife, Marietta Steelman, and my children, John D. Steelman, Annie M. Cuskaden and Millard F. Steelman, during their respective lifetimes, share and share alike, hereby directing my trustees and executors to pay to each, his or her respective share monthly six months after my decease.

"B. Upon the death of my beloved wife, I direct that the share theretofore paid to her shall be equally divided among and paid to my said children, or the survivor or survivors of them during their lifetime.

"C. Upon the death of any or either of my said children, leaving issue him or her surviving, then and in such event I direct that such share of my estate upon which he or she shall have been receiving the rents, issues

and profits, shall become the absolute property of the issue of such deceased child, should either of my said children die without issue, him or her surviving, then in such event I direct my executors and trustees to pay the share theretofore paid to said deceased child to the survivor or survivors of my said children, share and share alike during the life or lives of said survivor or survivors.

"D. Should any or either of my said children die without issue leaving him or her surviving a wife or husband and in such event I direct that one-half of said share of my estate upon which he or she shall have been receiving rents, issues and profits, shall become the absolute property of such wife or husband and that the rents, issues and profits arising from the other one-half of said share theretofore paid to said deceased child be paid to the survivor or survivors of my said children, share and share alike, during the lifetime of said survivor or survivors."

The codicil provides as follows:

"First. I do hereby ratify and confirm my said last will and testament in all respects, save so far as any part thereof shall be revoked or altered by this present codicil, and in particular, save so far as the same relates to the giving and devising of any part or portion of my estate in trust for my son John D. Steelman during his lifetime, as to which particular I do hereby revoke and alter my said will as follows: It is my will and I do direct that the part or share of my estate in and by my said will given and devised in trust to my said son, John D. Steelman, shall be held in trust for Edna Feyl and Marion Steelman (children of my said son, John D. Steelman) and the rents, issues and profits thereof paid to them during the lives of my beloved wife, Marietta Steelman and my children, Annie M. Cuskaden and Millard F. Steelman, or the survivor of them, and upon the happening of the last mentioned event the said Edna Feyl and Marion Steelman shall be entitled to receive the principal so held in trust for them share and share alike."

"Second. Should either the said Edna Feyl or Marion Steelman die without issue before receiving her share of said principal then and in such event the share of said decedent, both principal and interest, shall be paid to the survivor in accordance with the terms of my said will and of this codicil thereto."

The stipulated facts disclose that John D. Steelman had become financially involved between the date of testator's will and the date of the codicil to that will.

It also now appears that Annie M. Cuskaden, testator's daughter, died March 30th, 1916, and Marietta Steelman, testator's widow, died December 5th, 1916. These two deaths have occasioned the necessity for the present bill.

Had testator's widow died before his daughter Annie M. Cuskaden, as testator probably contemplated, no controversy would exist at this time, for in such case the widow's one-fourth share of the income would have then become payable one-third to testator's son, Millard, one-third to his daughter, Annie M. Cuskaden, and the other third to the two children of testator's son, John D. Steelman, John having been in effect disinherited by the codicil and his children substituted in his place to receive the income that would have been payable to John under the will. That would have made the share on which testator's daughter Annie M. Cuskaden would have been receiving income at the time of her death one-third of the entire estate, and by the terms of subdivision C of the third item of the will that share would have become the absolute property of the two children of Annie.

But Annie M. Cuskaden died before the widow and the share on which Annie was receiving income at the time of her death was but one-fourth of the estate. It is therefore contended at this time that subdivision C of the third item of the will limits the interest of the children of Annie to one-fourth of the estate and that that interest is not enhanced by the death of the widow after the death of Annie. It is accordingly urged that the remaining three-fourths of the income is now payable under the provisions of subdivision B of the third item of the will, either wholly to testator's son, Millard, who is the only surviving son entitled to take in view of the provisions of the codicil, or paid one-half to Millard and one-half to the two children of the disinherited son, John D. Steelman.

The present inquiry therefore necessarily involves the ascertainment whether some of the language of the will was intended by testator to be used and understood in its ordinary and natural sense, or whether it was used by testator with a different purpose and intent.

It is reasonably certain that testator intended that his widow should receive one-fourth of the income of the estate during her lifetime. Even though it should be thought that at the death of testator's daughter, Annie, one-fourth of the *corpus* should have been then set off to Annie's children in severalty

pursuant to the strict letter of subdivision C of the third item of the will, that procedure would not have been operative to reduce the widow's share of the income, for one-third of the income of the remaining three-fourths of the *corpus* would theoretically have been the same as one-fourth of the income of the whole *corpus*.

The mooted question therefore is what disposition is now to be made of the widow's share which represents one-fourth of the income of the estate.

.Subdivision B of the third item of the will says it "shall be equally divided among and paid to my [testator's] said children, or the survivor or survivors of them during their lifetime." This provision of the will must, of course, be read in connection with the modification embodied in the codicil. By that instrument testator's son John D. Steelman is clearly disinherited and his two children are substituted to receive the income which the will bestows upon him for his life. In view of these provisions of the codicil it is impossible to regard John D. Steelman as a surviving son to whom any part of the widow's share of the income becomes payable under subdivision B of item three of the will or to regard Millard F. Steelman as a sole surviving son of testator who is entitled to receive the widow's share of the income to the exclusion of the children of John D. Steelman who have been substituted in his place to receive the share of the income otherwise payable to him. It therefore seems clear that the children of John D. Steelman share equally with Millard F. Steelman in the one-fourth of the income which was payable to the widow at her decease.

It remains to consider, however, whether the one-fourth of the income which was payable to the widow at the time of her decease has now become payable one-half to Millard and one-half to the two children of John D. to the exclusion of the children of testator's deceased daughter, Annie, thus denying to Annie's children an equal share of the income of the estate with the son, Millard, and the two children of John D. because of the fortuitous circumstance of the death of Annie before the death of the widow, or whether the widow's share of the

income is to be enjoyed equally by the three several stocks of testator, as it would have been had the widow predeceased Annie.

I am unable to escape the latter view. It is true that sub-division B of the will by its terms directs the distribution of the widow's share of the income to surviving children, and sub-division C by its terms gives to the issue of testator's children the share on which the parent was receiving the income at the time of the parent's death, but it seems to me that these two provisions of the will when read together, and when considered in connection with the provisions of the codicil, adequately disclose the intent of testator that the widow's share of the income shall fall into the estate for the benefit of the children of testator, John being excluded and his children substituted in his place, and that the share contemplated to pass to the issue of testator's children under subdivision C at the death of their parent is the children's share as enhanced by the death of the widow. In reading the will without contemplating the possibility of the death of the widow before the death of a child of testator, and especially when considering the provisions of the will in the order in which testator has arranged them the view above expressed as to testator's intent is at once impressed; it is only when the circumstance of the death of Annie prior to the death of the widow is considered and applied to the strict letter of the will that any doubt as to testator's intent in that respect can be indulged.

I am accordingly unable to escape the conclusion that the intention of testator is sufficiently obvious and unmistakable from an examination of the entire will and codicil to impress upon the language thus used a meaning consistent with that obvious purpose.

Considering the provisions of the will, without the codicil, it seems entirely clear that its general scheme and obvious purpose was to preserve equality to testator's three children and to their respective stocks. The exclusion of the children of a deceased child of testator from the augmented income arising by the widow's death is wholly inconsistent with that scheme of equality and introduces a discrimination which testator could

not have intended. In such circumstances the word "survivor" should be understood in the sense of surviving *stirpes*. This view is adequately sustained by the authorities reviewed by Vice-Chancellor Howell in *Stout* v. *Cook, 77 N. J. Eq. 153,* to which may be added *In re Fox Estate (Penna.), 70 Atl. Rep. 954.* The decree in *Stout* v. *Cook* was reversed by our court of errors and appeals in *79 N. J. Eq. 573,* but for the primary reason that the absolute gifts to the children male was inconsistent with any general intent of equality.

I am also unable to conclude that the provisions of the codicil in any material way modify that general intent of equality found in the will. One son is there wholly disinherited and the children of that son are substituted in his place. That circumstance tends to accentuate rather than repel the intention of preserving for the issue of children the shares of their parents. It cannot, however, be overlooked that the provisions made in the codicil for the children of the disinherited son are not precisely the same as those made for the issue of the other children of testator, for the enjoyment of a share of the *corpus* by the issue of the disinherited son is not conditioned on the death of their father, but on the death of others, and a survivorship right is also introduced by the codicil as between these two children of the disinherited son. But it seems to me that this difference as to time or event of taking a share of the *corpus* cannot be properly regarded as a discrimination which relates to or in any way modifies the general intent disclosed by the will and codicil to secure equality in amount to the stock of each child of testator.

I am measurably impelled to these conclusions by the fact that if the language of the will should be enforced in its literal significance results will be necessarily reached which are obviously contrary to any natural or reasonable purpose of testator, and inconsistent with the purpose which I think the whole will and codicil, considered together, disclose. Such literal interpretation would have required the trustees to set off to the children of Annie M. Cuskaden one-fourth of the *corpus* of the estate at her death and would deny them any further

benefits thereafter. The widow's share of the income would have then been one-third of the remaining three-fourths, and at her death that share of the income would have fallen to Millard F. Steelman to the exclusion of all others, or, if not wholly to him then, assuming one-fourth of the *corpus* to be set off to the children of Annie as of a date prior to the widow's death, one-half to Millard F. Steelman and one-half to the two children of John D. Steelman, thus giving to Millard or to Millard and the children of John D. an income far in excess of that of the children of Annie M. Cuskaden, deceased; and at the death of Millard F., without issue, three-fourths of the *corpus* would fall to the children of John D. Steelman.

My conclusion is that at the death of the widow the children of Annie became entitled to one-third of the estate, and from that date one-half of the income of the remaining two-thirds became payable to Millard F. Steelman and the other half to the two children of John D. Steelman.

The bill also seeks instructions touching various future contingencies which may arise, and the arguments of counsel have also been directed to those possible contingencies. That is not the province of a bill of this nature. The contingencies suggested may never arise, and if they arise other interests may have then intervened which a court might desire represented and heard. It is accordingly inappropriate to here determine what may be the effect of the death of Millard without issue at some future time. The present controversy only involves the ascertainment whether the children of Annie take to the same extent they would have taken had the widow predeceased Annie, and whether the children of John D. share with Millard in the distribution of income at this time.