THE TRENTON TRUST AND SAFE DEPOSIT COMPANY

*v.*

WILLIAM G. COOK et al.

[Submitted January 30th, 1918. Decided February 18th, 1918.]

1. A gift of the income of a fund to testator's children for life, with survivorship among them if any child should die without issue—*Held,* that the surviving share was an independent bequest and did not again survive, but upon the death of the survivor passed to his personal representative.

2. A gift of the principal of the fund to the children of such of the testator's children as shall die leaving children—*Held,* to be contingent; vesting, however, under the rules at the earliest possible period, upon the death of a child leaving children, or, perhaps, sooner, as children were born to sons or daughters, and varying from time to time by divestiture or investiture as grandchildren were born or died before their parents.

3. A gift of the principal of the fund to the children of such of testator's children as shall die leaving children—*Held,* that upon the death of a child of the testator leaving no children, but leaving grandchildren, the gift vested in the grandchildren.

On bill, &c.

*Mr. Malcolm G. Buchanan,* for the complainant.

*Mr. Peter Backes, Mr. William J. Backes, Mr. Chauncey G. Parker, Mr. Frank H. Hall* and *Mr. J. Albert Homan,* for the defendants severally.

BACKES, V. C.

This is a trustee's bill for directions, which involves the construction of the instrument creating the trust.

Elias Cook died in 1879, leaving a last will and testament by which he bequeathed to his widow, Anna T. Cook, his household furniture, and devised to her his residence for life or widowhood.

To his sons Henry T., Frank D. and William G. he gave $15,-000 each; to the latter two when they attained their majority. To his two daughters Anna and Mary he gave $1,500 each, at one and twenty, or sooner upon marriage. The fifth and sixth clauses read:

"5. I give and bequeath to my Executors the sum of seventy thousand dollars, this fund to be composed of mortgages, bonds and securities in my hands at the time of my decease, which may be selected by them; and when paid in or collected by them to be reinvested and kept invested on bonds and first mortgages on lands in Mercer County aforesaid, either without improvement or if improved, then only upon brick or stone houses, with fire insurance thereon as collateral, said mortgages not to be for more than half the value of said lands and improvements. In trust nevertheless to pay the interest of said fund annually, or semi-annually, if the same can be so invested, to my wife Anna T. Cook during her life or widowhood, the said interest to be used by her, in her discretion, for the support of herself and such of our children as may remain at home unmarried.

"6. At the death of my said wife, or end of her widowhood, I will and direct that the said interest of the above fund of seventy thousand dollars be paid to my children, respectively, in the following proportions; to each of my daughters Anna and Mary, two sevenths parts thereof, and to each of my sons Henry, Frank and William one seventh part thereof; with survivorship between them if either should die without leaving a child or children, or descedents (*sic*) of a child or children; and when either shall die leaving children the whole principal in the respective proportions aforesaid to be paid to such children or child representing the parent; together with the accruing interest thereon."

He directed his executors to hold all of his property "not hereinbefore specifically disposed of" until the times for the payment of the legacies to his children and to pay the net income of the remainder to his widow for life or widowhood. At death, or termination of the widowhood, he gave "all the balance and residue of my estate and property wheresoever and whatsoever the same may be to my children, Henry, Frank, Anna, Mary and William, or to their children." The legacies were charged upon the realty in this language: "I do charge all of the above-specific legacies upon both my personal and real estate." The executors were empowered to sell the real estate.

The widow, Anna T. Cook, qualified as sole executrix and trustee and continued in office until her death in January, 1916,

whereupon the complainant was substituted. Only one of the children, William G. Cook, survives the widow, having a child and grandchildren. Frank D. died in 1887, leaving a son; Anna childless in 1882; Mary in 1895, leaving a daughter, and Henry T. in 1915, without issue. The testator left an estate, real and personal, of the value of, approximately, $150,000, of which only $34,500 was turned over to the complainant. The pecuniary legacies were all paid, presumably, but what became of the rest is unknown now. No part of the estate was ever set aside and appropriated by the executrix and trustee to the trust fund of $70,000, so far as appears, and, consequently, the depletion was not of the legacy, but of the estate, which includes the proceeds of the real estate, all of which was sold; and as the specific legacies are expressly charged upon all of the personal and real property (the trust fund is a specific legacy, *Allen* v. *Allen,* '76 *N. J. Eq.* 245), which follows also from a blending of the real and personal property in the disposition of the residue (*Corwine* v. *Corwine,* 24 *N. J. Eq.* 579), the remnant of the estate must be devoted to the trust created by the fifth clause (*Paterson Hospital* v. *Blauvelt,* 72 *N. J. Eq.* 725) and disposed of as provided by the sixth. There is as much variety of opinion as to the meaning of the latter clause as there are counsel in the case, each of whom pressed his view, sanguinely, with forceful argument and elaborate brief, amply supported by authorities, and, considered singly, none is without merit and some so persuasive as to cause me much discomfort; but, after viewing the clause from all angles presented, and others, and giving to each expression its meaning and function in its relation to others, and in complete harmony with the whole, I have reached the conclusion that the true construction is:

The income: Each child had a vested estate for life in the whole of the income, divisible into sevenths, the enjoyment of which was postponed until the marriage or death of the widow. The trust continued active until the death of the last survivor. Upon the death of a child without a descendant, its share survived to the remaining brothers and sisters, equally and absolutely, the accruing interest in the surviving share passing to the

personal representative. Dying, leaving issue, the parent's share (original) vested in the descendant, to accrue and to be paid when the principal is distributable.

The principal: Upon the death of a child, leaving issue, the principal in the respective proportions—as one-seventh bears to two-sevenths—of the whole fund, to be calculated at the death of the testator's last child (one-seventh descendants of sons to two-sevenths of daughters) passed to the descendants *per stirpes*, payable at the death of the last life tenant, together with the accrued interest thereon, viz., on the fraction of the income the ancestor enjoyed.

The complainant will be directed to hold the *corpus* until the death of William G. Cook, paying of the net income eight-twenty-firsts to him, two-twenty-firsts to Mary's administrator and two-twenty-firsts to Henry's and retaining and crediting three-twenty-firsts to the estate of Frank's son, who died recently, and six twenty-firsts to the daughter of Mary. This is as far as the decree may go. *Stewart* v. *Stewart, 61 N. J. Eq. 25.*

The advisability of construing wills, without writing opinions, has often been suggested—a boon to the judge and less confusion to the bar—but I feel that because of the great diversity of views, counsel are entitled to know how the result has been reached.

As to the income: The thing, the scheme the testator had in mind, as laid out in the sixth clause, although inartificially set down by the scrivener, manifestly was that the $70,000 fund, put aside primarily for his widow and her household, should remain intact after her demise and until the death of his last surviving child. The fact that the gifts to the children are of fractional parts of the whole income, whatever it might be from year to year, and not of the income of fractional portions of the fund, is a powerful indication that the fund was not to be distributed *pro tanto* upon the death of a child, as later language would, at first blush, seem to indicate was to be done. It is clear that the income only was to be enjoyed by the children and the principal by succeeding generations. In providing cross-remainders of survivorship among his children, upon the death of a child with-

out issue, the testator dealt only with the income apportioned to that child, and while the general rule is that a gift of income, without limit of time, carries with it a gift of the principal, there was here no apportionment of the principal to the income upon which the rule could operate. To apply the rule that a gift of the income, indeterminate, is a bequest of the principal, would be destructive of the testator's plainly expressed intention that only the descendants of his children should take the "whole" fund. The gift to a child leaving issue passed to the descendants and the gifts by way of survivorship were independent gifts of the shares to all surviving brothers and sisters equally and absolute (*3 Jarm.* (*R. & T.*) *568*), and upon the death of such survivor vested in his personal representative. *3 Jarm.* (*R. & T.*) *565; Boggs* v. *Boggs, 69 N. J. Eq. 497;* see, also, *Bonnell* v. *Bonnell, 47 N. J. Eq. 540* (at *p. 546*). Therefore, upon the death of Frank, one-seventh equals three-twenty-firsts passed to his son. Anna, dying childless, her two-sevenths equals six-twenty-firsts passed to Mary, Henry and William, equally; two-twenty-firsts to each. Upon the death of Mary, her two-sevenths equals six-twenty-firsts passed to her daughter; the survivorship interest of two-twenty-firsts from Anna to her administrator. Upon the death of Henry his one-seventh equals three-twenty-firsts interest passed to William and his two twenty-firsts survivorship from Anna to his administrator. The summation, therefore, as already stated, and presently payable, is: To William G. Cook, eight-twenty-firsts; administrator of Mary, two-twenty-firsts; administrator of Henry, two-twenty-firsts. Applicable, but to be held, three-twenty-firsts to the estate of Frank's son and six-twenty-firsts for the daughter of Mary.

Having done with the income, what of the principal? It is disposed of in these words:

"And when either shall die leaving children the whole principal in the respective proportions aforesaid to be paid to such children or child representing the parent; together with the accruing interest thereon."

It is the insistence of one of the counsel that under this language the fund vested in the testator's children upon the death

of the first child, leaving a child, and is now distributable as of that period; and the contention of another is that the testator failed to provide for the contingency of children dying childless, and as a consequence three-sevenths of the fund (to Mary's and Henry's possible descendants) are undisposed of and fall into the residue. Still another argues that the gift is to children of testator's children, living at the death of their parent, and excludes grandchildren. Let us see.

Up to the point of the above quotation of the clause, the testator dealt only with the income and he made complete disposition of it, if we give the concluding words "together with the accruing interest thereon" their appropriate meaning. He then proceeded to dispose of the principal, to be distributed as of the time when it would be no longer needed to produce the income. As to when and in what lots it was to go, there is little obscurity, if we keep in mind that it was not to be touched until it had fully served the primary purposes for which it was created. His children were not to have it in any event. Their children, or lineal descendants living at their death, were to be the recipients of his bounty. To them he gave "the whole principal in the respective proportions aforesaid," viz., by the formula of two to one, based on the division of the income by the fractions of two-sevenths to daughters' issue to one-seventh to sons'. At the time the testator made his will, and at his death, his children were unmarried and manifestly the gifts were contingent (*Beatty* v. *Montgomery, 21 N. J. Eq. 324; Howell* v. *Green, 31 N. J. Law 570*), vesting, however, under the rules at the earliest possible period, upon the death of a child leaving children, or, perhaps, sooner, as children were born to sons or daughters and varying from time to time by divestiture or investiture as grandchildren were born or died before their parents (*Herbert* v. *Post, 26 N. J. Eq. 278; Hopper* v. *Demarest, 21 N. J. Law 525; Male* v. *Williams, 48 N. J. Eq. 33*); and to be eventually enjoyed "in the respective proportions aforesaid;" which, while in disposing of the income the testator employed definite fractions, means not the definite fractions, but the relation between the respective number of the fractional parts. The reason, as complainant's counsel suggests,

for inserting "seventh" in the forepart of the clause, was to indicate that collectively the five shares of interest were to exhaust the total income; and that "seventh" was used because it required a division into seven parts to effectuate the "proportion" the testator had in mind, of two to one as between daughters' and sons' descendants. "When," as used in connection with "to be paid," would ordinarily denote the point of time when the gift was to take effect in possession, but considering that the enjoyment of the prior outstanding estates—in the widow for life, in the children for life—forbids this, and, further, that the sum of the legacy would be impossible of ascertainment at that time, it becomes at once apparent that the adverb of time "when" was inaptly used in the sense of "if" or "in case that," and "to be paid" as words of gift, vesting the estate immediately, postponed as to payment for the convenience of the estate. *Herbert* v. *Post, supra.* By adopting this construction, effect is given to every presently conceivable expression of intent, and the income, as well as the principal of fund, is completely disposed of. While the testator's intent is awkwardly expressed, it can be perceived, and in the language of Lord Mansfield, in *Chapman* v. *Brown, 3 Burr. 1634; 97 English Reprint 1015:* "In order to attain the intent, words of limitation shall operate as words of purchase; implications shall supply verbal omissions; the letter shall give way; every inaccuracy of grammar, every impropriety of terms shall be corrected by the general meaning, if that be clear and manifest."

As the principal, then, stands, the estate of Frank Cook's deceased son is vested of a quarter interest; the daughter of Mary of a half, and the daughter of William a quarter; the first two liable to be increased by the death of William's child and grandchildren in his lifetime.

I cannot agree with the contention of counsel that if William's daughter predeceases him, his grandchildren will not take. Although it is true that the gift is upon the stated contingency of any of the testator's children dying leaving children, it seems to me that the contingency is impliedly enlarged by the immediately preceding and complementary contingency of survivorship

"if either should die without leaving a child or children or descendants" and by the words of the gift themselves "to such children or child representing the parent," meaning, I take it, the great grandchildren. *Baldwin* v. *Tucker, 61 N. J. Eq. 412.* However, as William is living, this question is not ripe for decision, and an expression of opinion is gratuitous.

A decree will be advised in accordance with the directions.