67 N.J. Super. 564 (1961)
171 A.2d 348
FIDELITY UNION TRUST COMPANY, A NEW JERSEY CORPORATION, AS TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF PETER F. FLOOD, DECEASED, AS ADMINISTRATOR C.T.A. OF THE ESTATE OF ELIZABETH G. FLOOD, DECEASED, AND AS ADMINISTRATOR OF THE ESTATE OF MABEL G. CROSSMAN, DECEASED, PLAINTIFF-RESPONDENT,
v.
HENRY F. ROBERT, INDIVIDUALLY AND AS EXECUTOR OF THE LAST WILL AND TESTAMENT OF GRACE F. ROBERT, DEFENDANT-APPELLANT, AND EDWARD F. CAVANAGH, JR., AS EXECUTOR OF THE LAST WILL AND TESTAMENT OF EDITH FLOOD CAVANAGH, DECEASED, PETER F. CROSSMAN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1961.
Decided May 19, 1961.
*567 Before Judges GOLDMANN, FOLEY and COLLESTER.
Mr. Alfred C. Clapp argued the cause for appellant Robert (Messrs. Clapp & Eisenberg, attorneys).
Mr. William H. Osborne, Jr. argued the cause for respondent Crossman (Messrs. Pitney, Hardin & Ward, attorneys).
Mr. Henry F. Wolff, Jr. argued the cause for respondent Cavanagh (Messrs. Brogan & Wolff, attorneys; Mr. Thomas J. Brogan, of counsel).
Mr. Edward J. Brown argued the cause for respondent Fidelity Union Trust Co. (Messrs. Riker, Danzig, Marsh & Scherer, attorneys; Mr. Alvin Weiss, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Fidelity Union Trust Company, in its three-fold capacity as trustee under the last will and testament of Peter F. Flood, administrator c.t.a. of the estate of Elizabeth G. Flood, and administrator of the estate of Mabel G. Crossman, brought this action in the Chancery *568 Division seeking construction of the will of Peter F. Flood and instructions as to payment and distribution of income and principal of the trust he created.

I.
The facts are not in dispute. Peter F. Flood died on April 5, 1906 and his will was duly probated. The pertinent sections of the will provide:
"2nd., Upon the death of my wife Elizabeth Gertrude Flood, and immediately thereafter, to pay one fourth of the rents, income, issues and profits of my estate to each of my four daughters, viz: Mabel Gertrude Crossman, Margaret Maud Flood, Edith Adeline Cavanagh and Grace Elizabeth Robert, for and during the term of her natural life.
3rd., Upon the death of any one of my said daughters leaving issue her surviving, to pay to such issue, the rents, issues, profits and income to which the parent of such issue would be entitled if living, during his, her or their minority, and until he, she or they attain the age of twenty-one years.
4th., Upon the child or children of any of my daughters attaining the age of twenty-one years to pay to such child or children the one fourth of, if one, or the share of the one fourth of my estate, if more than one, for his, her or their use absolutely and forever.
5th., Upon the marriage of my daughter Margaret Maud Flood, it is my wish and I do hereby order my Executors to pay over to her, out of the principal sum of my estate, the sum of Five Thousand Dollars ($5000.) upon her wedding day.
Third:  In the event of the death of any one of my daughters without leaving issue her surviving, it is my will and I direct that the one-fourth share of the income bequeathed to each, shall be paid to the surviving daughter or daughters, in equal shares, and in the event of the death of any one of the children of any one of my daughters, that the share of the one-fourth of the income of my estate of such deceased child shall be paid to the surviving brothers and sisters of such deceased child, and in the event of the death of all the children of any one of my daughters before attaining the age of twenty-one years, without leaving lawful issue, that then the share which such child or children would have received shall be paid to the child or children of any one or all of the surviving of my said daughters."
Fidelity Union Trust Company is now administering the trust as sole trustee.
*569 Peter F. Flood was survived by his widow Elizabeth G. Flood, and four daughters, Mabel G. Crossman, Margaret M. Flood, Edith A. Cavanagh and Grace F. Robert. Elizabeth G. Flood died on February 20, 1931. Plaintiff bank is administrator c.t.a. of her estate.
On March 10, 1931 Mabel G. Crossman died intestate, survived by her son, Peter F. Crossman, then over 21. Plaintiff was appointed her administrator. Pursuant to paragraph Second, clause 4, the trustee paid one-quarter of the corpus to Peter.
Margaret M. Flood died intestate on June 8, 1936, unmarried and without issue, leaving surviving her sisters Edith and Grace, and her nephew Peter. Edith A. Cavanagh was appointed administratrix of her estate.
On July 16, 1958 Edith A. Cavanagh died without issue surviving. Defendant Edward F. Cavanagh, Jr. was appointed her executor.
Grace F. Robert, the fourth and last of the daughters, died on September 24, 1959, while this action was pending, survived by her only child, defendant Henry F. Robert, then over 21, who was appointed her executor.
Plaintiff, as trustee of testator's residuary estate, paid the income therefrom as follows: (1) from February 20, 1931 to March 10, 1931, to the four daughters, Mabel, Margaret, Edith and Grace, in equal shares, pursuant to paragraph Second, clause 2, of testator's will; (2) from March 10, 1931 to June 8, 1936, to Margaret, Edith and Grace in equal shares, pursuant to paragraph Second, clauses 2 and 4; (3) and from June 8, 1936 to July 16, 1958, to Edith and Grace in equal shares, pursuant to paragraph Second, clause 2, and paragraph Third of the will.
Thus, when Mabel died each of her sisters received one-third the income of the trust. When Margaret died, her sisters Edith and Grace continued to get their one-third of the income, plus one-half of Margaret's one-third. It is conceded by all parties that Grace, the last of the sisters, is *570 entitled to five-sixths of the trust income accruing from July 16, 1958, when Edith died, until September 24, 1959, when she died. This five-sixths share is arrived at by adding to Grace's three-sixths share received after Margaret's death, the one-third (or two-sixths) share which Edith had been receiving after Mabel died. The controversy as to income centers upon the disposition of the one-sixth share of income which Edith received from Margaret after the latter's death. The question is: Did this share accrue to Edith's estate, or did it pass to Grace under the will of Peter F. Flood?
When Grace died, her son Henry became entitled to a one-fourth share of the original trust corpus because he was over 21. Thus, one-half of the original corpus is accounted for: Peter F. Crossman had already received one-fourth and Henry's right to one-fourth is not questioned. The dispute arises as to the disposition of the remaining one-half of corpus which has not been disposed of because Margaret and Edith died without leaving issue.
In short, the construction of the will involves two disputed questions: (1) the disposition of the remaining one-half of corpus, and (2) whether Grace was entitled to the one-sixth share of income which Edith received from Margaret, or whether this one-sixth share accrued to Edith's estate.
The trial court held: (1) paragraph Third of the will deals solely with income, and hence the one-half share of the corpus remaining must pass by intestacy, and (2) the one-sixth share of income accrued to Edith's estate and therefore did not pass to Grace. Fidelity Union Trust Co. v. Cavanagh, 61 N.J. Super. 96 (Ch. Div. 1960).
Defendant Henry F. Robert appeals from the judgment, contending that (1) the final clause of paragraph Third:
"* * * and in the event of the death of all the children of any one of my daughters before attaining the age of twenty-one years, without leaving lawful issue, that then the share which such child or children would have received shall be paid to the child or children of any one or all of the surviving of my said daughters." (Italics ours) *571 should be construed as passing the remaining one-half of the original corpus to him as the only child of the daughter (Grace) surviving on the death of Margaret and Edith without issue them surviving; or (2) in the alternative, that if the word "surviving" is to be read as meaning "other," he is entitled to one-fourth of the original corpus, the other one-fourth passing to Peter; and (3) the one-sixth share of income did not accrue to Edith's estate but passed to Grace.
Although defendant Peter F. Crossman did not appeal from the judgment below, he, too, argues that the final clause of paragraph Third passed principal as well as income, but urges that the word "surviving" should be interpreted to mean "other," thereby entitling him to an additional one-fourth share of the original corpus. Plaintiff bank and defendant Edward F. Cavanagh, Jr., as executor of Edith Flood Cavanagh's estate, argue that the judgment of the trial court was correct.

II.
It is familiar law that in construing a will the function of the court is to ascertain and give effect to the intent of the testator. That intent is to be drawn from the language of the entire will as illuminated by the surrounding facts and circumstances existing at the date of the execution. In re Armour, 11 N.J. 257, 271 (1953); Burlington County Trust Co. v. DiCastelcicala, 2 N.J. 214, 218 (1949); 3 Restatement, Property, § 242, p. 1196 (1940).
As was said in Murphy v. Murphy, 118 N.J. Eq. 108, 112-113 (Ch. 1935), affirmed per curiam 119 N.J. Eq. 83 (E. & A. 1935):
"The meaning and intention of the testator must be determined, not by fixing the attention on single words in the will, but by considering the entire will and the surroundings of the testator when he executed the will, and by ascribing to him, so far as his language permits, the common impulses of our nature. Torrey v. Torrey, 70 N.J.L. 672." (Italics ours)
*572 And see Greene v. Schmurak, 39 N.J. Super. 392, 400 (App. Div. 1956).
In Bank of New York v. Black, 26 N.J. 276 (1958), the issue before the court was whether a residuary bequest made by the testatrix to her daughter "of all my estate" was intended to pass property which was not part of the estate but over which she had a general power of appointment. The Supreme Court held that testatrix' probable intention was to have the daughter take the property encompassed by the power. With respect to the quantum of proof needed to establish the requisite intent to exercise the power, the court said:
"We do not think it is necessary for the appellant to present so forceful and compelling a case that it is impossible to form a rational supposition contrary to her contention. The object of our investigation is to determine the probable intent of the testatrix by a preponderance of the evidence and to carry it out in accordance with her wishes even though they be imperfectly expressed. We do what elemental justice and fundamental fairness demand under the necessitous circumstances. * * *" (at pages 286-287)
The court then quoted with approval from the concurring opinion of Judge Clapp in In re Klein, 36 N.J. Super. 407, 419-420 (App. Div. 1955), and concluded with
"Essential justice does not permit `a discernible intention of the testator' to be defeated. The quantum of proof may be supplied by logical inferences if they are sufficiently persuasive to carry the necessary conviction. * * *" (at page 294)
Although Bank of New York dealt with the quantum of proof needed to establish an intent to exercise a power of appointment, we believe the philosophy there expressed should be applied broadly to all cases involving a quest for the testator's intention. Hence, our inquiry in construing the will before us must be directed towards seeking out the probable intention of the testator, drawn from the words of the entire will as illuminated by the surrounding facts and circumstances. Our primary desire is to effectuate the wishes *573 of the deceased if they are reasonably and lawfully discoverable and proven by a preponderance of the probabilities. Bank of New York v. Black, above, at page 285.
In this connection we note that the trial court refused to consider an affidavit by Peter F. Crossman, submitted by his counsel. The Cavanagh estate consented to the use of the affidavit in lieu of Peter's testimony, although it questioned its value and explicitly reserved the right to object to any statement therein which seemed objectionable on any ground. It appears that the original affidavit was not formally offered in evidence at the final hearing, although the trial judge undoubtedly had a copy thereof since it was mentioned in his opinion. Whatever the formal status of this affidavit, we may consider it under our original jurisdiction, R.R. 1:5-4 (a).
The affidavit stated that testator disliked his sons-in-law, Dr. Paul Cavanagh, Edith's husband, and Harry Robert, Grace's divorced husband  particularly the former. He "had a horror of women having money"; he believed they should always have an adequate income, but "was afraid that husbands, or other men, would separate them from any principal they had." He had only one desire  "the happiness and well-being of his wife, children and grandchildren." Crossman further said that other than this, decedent had no interest whatsoever in the Crossmans, Cavanaghs and Roberts.
Apparently, the trial judge was of the opinion that the will, specifically paragraph Third, was not ambiguous, and therefore declined to consider the affidavit. However, he misapprehended the purpose of the affidavit. It was not introduced to establish what the testator intended his will to provide; rather, it was introduced as evidence of the circumstances surrounding testator at the time he executed his will. The better rule is that the court is entitled to consider such extrinsic evidence, even in the absence of ambiguity in the will. It should be admissible to indicate doubt as well as to resolve it. See 5 N.J. Practice (Clapp, Wills *574 and Administrations), § 108, p. 250 (1950), and 1960 pocket supplement; 4 Page on Wills, § 1618, pp. 629-631 (1941). Moreover, the use of the word "share" in the final clause of paragraph Third, without specific reference to income or principal, was ambiguous. Extrinsic evidence was admissible to clear up this ambiguity.
Due consideration must also be given the presumption against partial intestacy. That presumption is even stronger where, as here, the will contains a residuary clause. Bankers Trust Co. v. New York Women's League for Animals, 23 N.J. Super. 170, 190 (App. Div. 1952), modifying and affirming, as modified, 17 N.J. Super. 398 (Ch. Div. 1952); Lawes v. Lynch, 6 N.J. 1, 8 (1950). This presumption, like all principles and rules of will construction developed by the courts, is intended as an aid to ascertain the intention of the testator and to give effect thereto. Rules for construing wills are but guides, drawn from the common experience of mankind, to assist the court in finding the testator's intent. See 2 Page on Wills, § 916, p. 792 (1941). Thus, "if the legal effect of [the testator's] expressed intent is intestacy it will be presumed that he designed that intent since he is presumed to know the law." Lawes v. Lynch, above.
Keeping in mind the basic precepts outlined above, we turn to construing Peter F. Flood's will.

III.
The first question to be resolved is whether the final clause of paragraph Third refers to corpus or income, or to both. For purposes of analysis, paragraph Third may be divided into three clauses:
"(1) In the event of the death of any one of my daughters without leaving issue her surviving, it is my will and I direct that the one-fourth share of the income bequeathed to each, shall be paid to the surviving daughter or daughters, in equal shares, and
(2) [I]n the event of the death of any one of the children of any one of my daughters, that the share of the one-fourth of the *575 income of my estate of such deceased child shall be paid to the surviving brothers and sisters of such deceased child, and
(3) [I]n the event of the death of all the children of any one of my daughters before attaining the age of twenty-one years, without leaving lawful issue, that then the share which such child or children would have received shall be paid to the child or children of any one or all of the surviving of my said daughters." (Italics ours)
The general scheme of distribution established by the will was therefore as follows: the income from the trust was to be paid to decedent's widow for life; upon her death, the income was bequeathed to decedent's four daughters equally until the death of one of them; thereafter, the income was to be paid to her issue until each attained the age of 21, at which time the child was to receive a share of corpus. These provisions, all found in paragraph Second of the will, anticipate the most likely and natural course of events, to wit: that decedent's daughters would outlive his wife and would then in turn die, leaving issue who would eventually attain the age of 21.
Paragraph Third of the will was designed to pick up certain contingencies which might disturb the natural course of events. In the first clause of that paragraph the testator provided for income should one of his daughters die without issue (a contingency analogous to all the issue of a daughter dying before the age of 21). The second clause provided for income where one of the children of a daughter died. The third clause dealt with the contingency where all of the children of a daughter died before reaching the age of 21.
The will anticipates not only the ordinary and natural course of events, but the vicissitudes of life as well. The testator contemplated the possibility that his daughters might die without issue or that their issue might die before reaching the age of 21. In the former instance, he made provision for the income, but with respect to the latter he expressed himself imperfectly by the ambiguous use of the word "share" in clause three of paragraph Third.
*576 A reading of the will in light of the Crossman affidavit shows that the primary objects of the testator's bounty were his wife, his daughters and his grandchildren, and that he intended to pass all of his estate to his wife and his issue. He attempted to provide for every possible contingency that might defeat his primary intent. Despite evidence that the will was carefully drawn to cover all contingencies, decedent (or his scrivener) was, like all mortals, fallible. The error was not in failing to anticipate the contingency that his daughters might die leaving issue who would not live to 21, but in clearly expressing the testamentary intent should such a contingency arise.
The condition upon which paragraph Third, clause 3, was to become operative was the death of all of the children of any one of testator's daughters before age 21. The clause first refers to the time when all the children were dead before reaching 21. The next allusion is to a future point in time when all the children would have reached 21 had they lived. For the purposes of this analysis, clause 3 would read as follows:
"* * * in the event of the death of all the children of any one of my daughters before attaining the age of twenty-one * * * that then the share which such * * * children would have received * * *." (Italics ours)
The shift in reference from one point in time to a future time gives rise to the inference that testator is referring to that which a child or children "would have received" on attaining 21. The age of 21 was the time when the children of a daughter were to receive corpus. It is probable that this point in time was equated in testator's mind with a gift of corpus.
Yet another factor indicates that this clause refers to corpus. There is a definite parallel between paragraphs Second and Third with respect to the order of the subject matters with which they deal. In paragraph Second, after providing for his wife, testator in clause 2 makes a gift of *577 income to his daughters for life; in clause 3 a gift of income to children of a deceased daughter during minority; and in clause 4 a gift of corpus to grandchildren upon reaching 21. In paragraph Third, testator deals with these subjects in the same order. Clause 1 of that paragraph deals with income payable to his daughters in the event one of them dies without issue. Clause 2 deals with income payable to the surviving brothers and sisters of a child of a deceased daughter when it died. Clause 3 ties in with paragraph Second, clause 4, by which the testator bequeathed corpus to the children of a deceased daughter upon attaining age 21. In other words, it is logical as well as probable that paragraph Third, clause 3, completes the disposition projected in paragraph Second, clause 4, by providing for a contingency arising under that section. This parallel treatment is persuasive internal evidence of a testamentary pattern to dispose of income and then corpus in a well-considered sequence.
Viewing the will in the frame of reference of the circumstances surrounding testator at the time of its execution, we conclude that his probable intent was that the corpus of his estate pass by the third clause of paragraph Third. We emphasize that we are not thereby importing into the will a wholly unexpressed intent. Testator's intent is manifested by the very words of his will, illuminated by the surrounding circumstances, despite the fact that it was imperfectly expressed by the use of the word "share" in the final clause of paragraph Third.
This is not a case in which we must supply non-existent words. The words are present. Yet, words are but empty vessels whose meaning must be supplied. Their content, in cases like this, must be derived from the judicially ascertained intent of the testator. To repeat what was said in Bank of New York v. Black, above, "Essential justice does not permit `a discernible intention of the testator' to be defeated." When the discernible intention points to the meaning of an ambiguous word, we should not hesitate to adopt that meaning.
*578 Aside from the considerations already mentioned, there is a well-settled rule of will construction which fortifies our conclusion as to testator's intent. If clause 3 of paragraph Third deals only with income, then we have a gift of income to testator's grandchildren which is of indeterminate duration. There is nothing in the will which would limit in time the gift of income he made to the children of surviving daughters in the event that all the children of one daughter died before reaching the age of 21.
Where there is an indeterminate gift of income, the rule is well established that the gift passes corpus as well. See 5 N.J. Practice (Clapp, Wills and Administration), § 227, pp. 553-554 (1950). In Westfield Trust Co. v. Beekman, 97 N.J. Eq. 140, 147 (Ch. 1925), affirmed o.b., 99 N.J. Eq. 435 (E. & A. 1926), the court said:
"* * * The rule applicable is that where there is a bequest of income from real or personal estate, or from both, without limit of time, or gift over which can operate, it is a bequest of principal, if there be no expression in the will of a contrary intent. The rule applies whether the gift of income be direct or through the intervention of a trustee, and is not to be defeated because some duty in realizing assets and securing and paying the income is cast upon the trustees. * * *"
And in Brown v. Robbins, 142 N.J. Eq. 169, 171 (Ch. 1948), it was held that this rule of construction is so well established that a testator must be presumed to have drawn his will with reference to it.
It cannot be maintained that this gift of income is subject to an implied condition subsequent, namely, that it was to last only until the children of the surviving daughters attained the age of 21. If such a condition were to be implied on the theory of probable intention, then it is also probable that the event which limited the duration of this gift of income was a gift of corpus to the said children of the surviving daughters. Hence, whether clause 3 constituted a gift of income without limit in time or whether the gift is limited in duration by an implied gift of corpus, the clause *579 must be construed as constituting a gift of corpus to the children of the surviving daughters.
In any event, we conclude that clause 3 of paragraph Third bequeathed corpus to the children of the surviving daughters.

IV.
Although paragraph Third, clause 3, purports to be operative on the "death of all the children of any one of my daughters before attaining the age of twenty-one years," it must also be construed to be operative where a daughter died without having had children. The authorities support this rule of construction, because it effectuates the testator's underlying intention. As stated in 6 N.J. Practice (Clapp, Wills and Administration), § 345, p. 180 (1950):
"* * * Likewise, where there is a limitation of realty or personalty `to A for life then to his children and if they die under age, then to B', B takes if A has no child. * * *"
Accord: 1 Tiffany, Real Property (2d ed. 1920), § 174, p. 586; 1 Simes and Smith, Future Interests (2d ed. 1956), § 466, p. 456.
Respondents do not take issue with the above rule. It seems clear that testator intended the same result whether all the children of one of his daughters died before reaching 21 or she never had any children. His primary concern was the absence of a child 21 years old, capable of taking the corpus without the appointment of a guardian. See Jones v. Westcomb, 1 Eq. Cas. Abr. 245, 21 Eng. Rep. 1022 (Ch. 1711), apparently the leading case on this subject.

V.
We now consider the effect of the testator's use of the word "surviving" in the last clause of paragraph Third. We have seen that in the event that any one of testator's daughters died without having had children, the share which *580 such child or children "would have received" was to pass to the child or children of "any one or all of the surviving of my said daughters." We have construed "share" as referring to corpus.
Peter F. Crossman's mother, Mabel, predeceased her sisters Margaret and Edith. Thus, if we interpret "surviving" in its literal and ordinary sense, Peter would not be entitled to share in the undistributed one-half portion of the trust corpus remaining because he was not the child of a "surviving" daughter at the time Margaret and Edith died. Henry F. Robert contends that "surviving" should so be interpreted and that he, as the child of Grace, the last survivor of testator's four daughters, is entitled to all the undistributed corpus. We agree.
It is probable that the testator's initial thought was to treat all branches of his family alike with respect to income and corpus. As noted previously, he no doubt hoped that events would take a natural and orderly course. Hence, he bequeathed the trust income in equal shares to his four daughters after the death of his wife; upon the death of one of his daughters leaving issue, her share of income was to be paid to them in equal shares; upon the issue of any of his daughters attaining age 21, such issue was to be paid one-fourth of the trust corpus, if one, or the one-fourth was to be divided equally if there were more than one.
However, in paragraph Third he proceeded to spell out the distribution he desired in case events did not take their natural course. To provide for the contingencies of death he adopted a series of survivorship clauses, thus making his gifts of income and corpus dependent upon the order in which his daughters died. For example, in paragraph Third, clause 1, testator directed that in case any daughter died without issue, the income was to be paid to the surviving daughters. Here it is evident that the testator anticipated an inequality among the stocks of his family. The daughters dying later are given a greater percentage of income during their lives. Likewise, the children of daughters *581 dying later are given the possibility of enjoying a far greater share of income should their mother die before they reached 21 than would be enjoyed by the issue of another, prior deceased daughter, who died leaving issue.
If a daughter died leaving issue, testator was concerned with the support of the issue. But if a daughter died leaving no issue, his concern was with the surviving daughters. The pattern created by paragraph Third is one which funnels or shifts the income to the surviving daughters, and should a surviving daughter die leaving issue under 21, the additional income is passed down to the children of that daughter. See paragraph Second, clause 3.
We believe it probable that testator intended the pattern of funnelling the income into the surviving daughters and their issue, to be followed with respect to corpus. There is nothing in the Flood will to indicate that he contemplated equality amongst his grandchildren should the ordinary course of events not occur.
By their very nature, survivorship clauses often result in inequality. Our task is not to establish a "fair" or "equitable" scheme of testamentary distribution. Rather, it is to effectuate the primary intent of the testator as expressed in the language of the will, illuminated (as we have said) by the surrounding circumstances. We do not find anything in the will which would indicate that testator meant to use the word "surviving" in paragraph Third, clause 3, in any but its ordinary sense.
Our conclusion regarding the meaning which testator intended to give the word "surviving" is supported by the New Jersey cases. The leading case is Van Nest v. Van Nest, 126 N.J. Eq. 234 (1939), in which the Court of Errors and Appeals affirmed on the opinion below the comprehensive discussion of the question by Vice-Chancellor Bigelow. The controversy before the court in Van Nest centered around a clause in the will directing that on the death of either of testator's children without lineal descendants, "the surviving child shall be entitled to her sister's *582 share." The executor and children of Elizabeth Van Nest, the daughter who died first, argued that the word "surviving" should be read as "other." The executor of the surviving daughter argued that the word should be given its literal or ordinary meaning. The vice-chancellor said:
"The terms `surviving' and `survivor' make the devolution of an estate depend on the hazard of one person outliving another and so are apt to bring about an unequal and unreasonable distribution. To avoid that result, courts are frequently urged to disregard survivorship, but in New Jersey the pressure of such argument has been uniformly resisted. * * *" (at page 236)
After a thorough discussion of the cases, the vice-chancellor went on to note:
"There are cases * * * in which a testator has evinced particular care of his grandchildren and courts enlarge `surviving children' of testator to include those who survive per stirpes though not in person, to the end no grandchild be excluded. But Mr. Hayes' will is not of that character; he gave the issue of either child no interest whatever in the share of the other child." (at page 240)
In Stout v. Cook, 77 N.J. Eq. 153, 163-164 (Ch. 1910), Vice-Chancellor Howell, faced with the meaning of the words "surviving children" in a will, found that the testator's intent was to make an equal division of his estate among the seven branches of his family and held that
"* * * the word in question should not be read literally, or changed into `other,' but that rather like the determination in some of the English cases it should be held to mean a stirpital succession."
The Court of Errors and Appeals reversed, holding that there was nothing in the will which authorized a reading of the words "surviving children" in any but their ordinary and natural sense. 79 N.J. Eq. 573, 579 (1911).
The problem again arose in Cuskaden v. Steelman, 88 N.J. Eq. 93 (Ch. 1917). Vice-Chancellor Leaming concluded:
*583 "Considering the provisions of the will, without the codicil, it seems entirely clear that its general scheme and obvious purpose was to preserve equality to testator's three children and to their respective stocks. The exclusion of the children of a deceased child of testator from the augmented income arising by the widow's death is wholly inconsistent with that scheme of equality and introduces a discrimination which testator could not have intended. In such circumstances the word `survivor' must be understood in the sense of surviving stirpes. This view is adequately sustained by the authorities reviewed by Vice-Chancellor Howell in Stout v. Cook, 77 N.J. Eq. 153, to which may be added In re Fox Estate (Penna), [222 Pa. 108] 70 A. 954. The decree in Stout v. Cook was reversed by our court of errors and appeals in 79 N.J. Eq. 573, but for the primary reason that the absolute gifts to the children male was inconsistent with any general intent of equality." (at pages 98-99)
But the attempt of Vice-Chancellor Leaming to distinguish Cuskaden from Stout v. Cook was to no avail. The Court of Errors and Appeals reversed, 88 N.J. Eq. 554 (1918), saying:
"* * * The only ground for asking us to attribute an unusual meaning to the word `survivor,' is that the obvious scheme of the will is to secure equality, and that this cannot be done by attributing the plain and usual meaning to the words. The premise is not sound. It cannot be claimed that the testator meant to secure equality among his children, since it is apparent upon the face of the will itself that the ordinary sense of the words should not lead to equality among the children in the probable event which has in fact happened  the death of one child before the mother. To say that the words must be used in an unusual sense to produce an equality which does not appear to have been the testator's intent until the unusual sense has been adopted, is clearly to argue in a vicious circle. * * *" (at page 557) (Italics ours)
The court went on to point out why it believed the testator did not intend to treat the stocks of his family equally.
The paramount principle which emerges from the cases is that in the absence of an intent discernible from the will to secure equality amongst the branches of a family, the word "surviving" must be interpreted in its ordinary sense and not as meaning "other" or "surviving per stirpes."
The two New Jersey cases cited on this question by defendant Crossman, Brown v. Fidelity Union Trust Company, *584 134 N.J. Eq. 217 (Ch. 1943), affirmed o.b. 135 N.J. Eq. 461 (E. & A. 1944), and U.S. Trust Company v. Jamison, 105 N.J. Eq. 418 (Ch. 1929), claimed to be analogous, are not in point. In re Fox, 222 Pa. 108, 70 A. 954 (Sup. Ct. 1908), relied on by Vice-Chancellor Leaming in Cuskaden, was tacitly disapproved when the Court of Errors reversed Cuskaden. Balch v. Pickering, 154 Mass. 363, 28 N.E. 293, 14 L.R.A. 125 (Sup. Jud. Ct. 1891), is to the same effect as In re Fox.
Since the word "surviving," as used in paragraph Third, clause 3, must be given its ordinary meaning, it follows that Henry F. Robert alone is entitled to the undistributed corpus of the trust.

VI.
We turn to the final question raised on this appeal: Does paragraph Third, clause 1, entitle Grace  more accurately, her estate now that she has died  to the one-sixth share of income which Edith received from Margaret, or does it accrue to Edith's estate? The trial court held in favor of Edith's estate.
The general rule is that a clause in a will divesting a devisee or legatee of his interest on the happening of a certain contingency will not, in the absence of distinct evidence of intention, extend to shares once accrued under such a clause so as to pass it a second time. Boggs v. Boggs, 69 N.J. Eq. 497, 502 (Ch. 1905); Trenton Trust & Safe Deposit Co. v. Cook, 88 N.J. Eq. 516 (Ch. 1918); Skinner v. Boyd, 98 N.J. Eq. 55 (Ch. 1925), affirmed o.b. 100 N.J. Eq. 355 (E. & A. 1926); 1 Simes and Smith, Law of Future Interests (2d ed. 1956), § 547, pp. 542-3; 5 N.J. Practice (Clapp, Wills and Administration), § 131, at page 310 (1950); 3 Restatement, Property, § 271, p. 1394 (1940); Note, 46 Ill. L. Rev. 776, 780 (1951).
Like all rules of will construction, the rule concerning accrued shares is designed to ascertain and effectuate the intention of the testator. Therefore, the authorities recognize *585 that the rule has no application where there is distinct evidence that the testator did not intend a share to accrue.
In most cases, the testator has not specifically provided for disposition of accrued shares, but intention has been found in the use of the words "his or her share or shares" in the divesting clause, where only one original share has been possessed, or where the testator treats the property devised as an aggregate, or where he makes a gift over of the whole fund. Note, 46 Ill. L. Rev., above, at page 78 (1951). In Boggs the court discussed the exception to the general rule which exists where the will indicates that the testator intended the trust fund to remain intact until the death of the life tenant and then be distributed in mass to the remaindermen. This exception obviously is not applicable to the present case because the provisions of paragraph Second clearly reveal an intent that the trust fund should be divided and successively diminished as each daughter died leaving issue. But the intent of the testator to pass accrued shares in the same manner as original shares may be revealed by other indicia. And as noted previously, the quantum of proof by which such an intent must be established is a preponderance of the probabilities.
Defendant Cavanagh and plaintiff trustee recognize that the general rule as to accrued shares must yield to a contrary intention of the testator, but argue there is insufficient proof of such a contrary intention. We reach a contrary conclusion.
It will be recalled that the testator gave the original shares of income to the surviving daughter or daughters in the event any of them died without issue. Furthermore, he gave the income and principal to children of a daughter who died leaving issue surviving. The provisions of the will thus clearly disclose an intent by testator to give the income of his estate to his living daughters, followed by a gift to their surviving issue, if any. We find nothing in the will to indicate that he desired a daughter's estate to take any part of the income if she died without issue.
*586 An indication that testator intended to pass accrued shares by paragraph Third, clause 1, is found in the circumstances surrounding him at the time he executed the will. As revealed in the affidavit of Peter Crossman, testator had a strong prejudice against leaving anything to the estate of his daughters, not only because he feared giving money absolutely to his daughters during their lives, but primarily because he did not wish to bestow his bounty upon his sons-in-law. Yet this could be the result if an accrued share vested in the estate of a daughter.
It must be concluded that the testator's probable intention was that the first clause of paragraph Third pass accrued shares as well as original shares and that Grace Robert was entitled to all the income accruing to the trust between Edith's death and her own.
We note, incidentally, that the general rule that accrued shares do not pass with original shares, absent evidence of a contrary intent, has been the subject of some criticism. See 5 N.J. Practice (Clapp, Wills and Administration), § 131, p. 310 (1950), citing 2 Jarman, Wills, [*]1521 (6th Amer. ed. 1893). The general rule that accrued shares do not pass with original shares does not, it is said, recognize the probable intention of the testator. It would seem probable that a testator who wished a beneficiary to lose his original interest on the happening of a certain contingency would also probably intend that any accrued shares be divested as well.
The judgment below is reversed with directions that judgment be entered in accordance with this opinion.